Weco Products Company, Appellant, vs. Reed Drug Company, Respondent.

*May 27—September 14, 1937.*

For the appellant there were briefs by *Herbert L. Mount* of Milwaukee, attorney, and *Edward S. Rogers, William T. Woodson,* and *James H. Rogers* of Chicago, Illinois, of counsel, and oral argument by *Mr. Rogers* and *Mr. Mount.*

For the respondent there were briefs by *Fred R. Wright* of Milwaukee, attorney, and *Singer & Singer* of Cleveland, Ohio, of counsel, and oral argument by *Mr. Wright*.

The following opinion was filed June 21, 1937:

FRITZ, J.    There is no controversy in respect to the findings of fact upon which the court based its conclusions of law and judgment dismissing the complaint.    For consideration of the issues of law presented on this appeal, it suffices to note the following facts : The plaintiff, an Illinois corporation, licensed to do business in Wisconsin since November 5, 1935, is the producer of tooth brushes and tooth paste sold under labels or in containers bearing its trade name and registered trade-mark "Dr. West's," of which it is the owner by virtue of its exclusive use thereof as its trade name and trade-mark for upwards of fifteen years ; and in that period the plaintiff by advertising and otherwise created a valuable good will for that trade name and trade-mark and its products sold thereunder, and also created a valuable dealer good will by co-operation, service, and the maintenance of prices yielding a fair profit to retailers.    Those commodities have been and are widely and extensively sold in Wisconsin under and by that trade name and trade-mark by retail drugstores and others, including the defendant, and are in fair and open competition with many other commodities of the same general class produced by others.    In the course of years there developed in the drug trade a practice of cutting prices of commodities sold in such stores, including various well-advertised commodities well known to the public, and sold and identified under distinctive trade-marks, brands, and names.    Under that practice some retail dealers offered such products at prices conspicuously lower than the marked or established prices thereof, as so-called "leaders," as a means to draw trade.    Stores at which that practice was prevalent became known as "Cut-Rate Drug Stores," and such retailers

considered the use of such "leaders" a valuable trade advantage in that, with other things, it gave them an opportunity to persuade customers who were attracted thereby and the cut-rate prices announced therefor to purchase other merchandise in place of such advertised "leader" or additional merchandise sold at a profit; and, in either event, the profits realized on such other or additional merchandise exceeded the loss necessarily sustained on any "leader" sold as stated. That price-cutting practice engendered a condition by which other dealers were forced to meet the cut prices, and one cut produced another in retaliation, so that ultimately in a particular community well-known articles identified by trade-marks, brands, and names, with prices established by the producers or manufacturers thereof, were offered at prices reduced to a point which yielded little or no profit, and, in some cases, represented an actual loss, so that the dealers' incentive to sell such commodities was destroyed, and that they often refused to handle or stock the same, or were reluctant to sell them when called for by the public, or would urge the sale of other products upon which greater profits could be made. As a further result of those practices, the producer or manufacturer of identified merchandise, which had been handled in that manner by "Cut-Rate" stores, suffered a severe loss of market and facilities for distribution, and his business and good will became seriously interfered with, and, in some cases, was practically destroyed.

On May 2, 1935, there became effective ch. 52, Laws of 1935, which created secs. 133.25 to 133.27, Stats., and designated sec. 133.25 as the "Fair Trade Act." On November 18, 1935, the plaintiff tendered to members of the retail trade in this state handling its products, including the defendant, a proposed fair-trade contract, with provisions, including a stipulated price, that were authorized by and in accordance with subs. (3) and (4) of sec. 133.25, Stats. Those contracts, after being prepared and signed by the

plaintiff's officer in Chicago, were sent to Wisconsin for distribution among retail dealers, and here they were executed and entered into by about six hundred or fifty per cent of such retailers. The defendant, owning and operating six retail "Cut-Rate" drugstores in Milwaukee and one in Kenosha, refused to execute such a fair-trade contract, when it was tendered by the plaintiff; but on December 10, 1935, the defendant was notified by the plaintiff of the effectiveness of the contracts which it had entered into with other dealers, as stated above, and also of the Fair Trade Act. The minimum resale prices stipulated in those contracts are fair and reasonable, (a) as in comparison with competitive commodities, (b) upon the basis of plaintiff's manufacturing and distribution costs, (c) upon the basis of merit, quality, and popularity, and (d) upon the basis of the margin of profit allowed to the retail and wholesale trade; and no complaint was filed by the defendant or any other party with the state department of agriculture and markets, under sub. (7) (a), of sec. 133.25, Stats., in respect to those prices.

In April, 1936, the defendant, with knowledge of those contracts, including the minimum resale prices stipulated therein, and in furtherance of its business in the manner and by the use of the price-cutting practices, described above, wilfully and knowingly advertised, offered for sale, and sold tooth brushes and tooth paste under plaintiff's trade name and trade-mark "Dr. West's" at prices which were below the minimum resale prices stipulated in those contracts. Those acts and competitive practices of the defendant caused the plaintiff substantial but indeterminable loss and damage, and if they are continued by the defendant, the plaintiff will continue to suffer similar damage for which pecuniary compensation would not afford adequate relief.

Before and after the Fair Trade Act went into effect the plaintiff's sales of its products for delivery to wholesale and

retail dealers in Wisconsin were consummated and concluded in Illinois and those sales constituted, as the court rightly concluded, interstate commerce. In view of the facts stated above, the court also concluded that the Fair Trade Act by its terms, and the terms of the plaintiff's fair-trade contracts, was applicable only to transactions consummated in Wisconsin, and in connection with sales made between the contracting parties; that, therefore, those contracts have no binding effect upon the defendant, who had in no manner become a party thereto; that sub. (5), of sec. 133.25, Stats. (which provides that price cutting which is in violation of sec. 133.25, Stats., is unfair competition and actionable at the suit of any person damaged thereby), is void and unconstitutional in that it attempts to delegate legislative power to private individuals; and that the plaintiff was not entitled to the injunction prayed for in its complaint.

The appellant's principal contention on this appeal is that the court erred in concluding that sub. (5), of sec. 133.25, Stats., attempts to delegate legislative power to private individuals, and is therefore void and unconstitutional. However, as the respondent claims that "the price maintenance agreements plaintiff seeks to bind defendant to, by force of sub. (5), of sec. 133.25, of the act, are illegal because they are violative of the Federal Anti-Trust Laws," in that "they constitute an agreement to restrain interstate commerce," and that it is therefore not necessary to pass upon the validity of the Fair Trade Act, we shall first consider whether the plaintiff can recover herein because of any such alleged illegality in those agreements.

At the outset it must be noted that, as the court rightly concluded, the "plaintiff brings this action against defendant solely under and pursuant to sub. (5), of sec. 133.25, Wis. Stats." It is an action for relief based on acts committed by the defendant which are injurious to the plaintiff's good will

and its right to profits from the sales of its trade-marked goods in the manner declared wrongful and actionable under sec. 133.25 (5), Stats. The material and essential facts, upon which the plaintiff claims to be entitled to relief herein, are that the defendant wilfully and knowingly advertised, offered, and sold the plaintiff's products at less than the minimum resale prices stipulated in the fair-trade contracts entered into by the plaintiff under sec. 133.25 (3), Stats., with the six hundred Wisconsin retailers who accepted the contracts and sell the plaintiff's products only in this state, and who agreed therein not to advertise, offer, or sell them in this state under the plaintiff's trade name or trade-mark at less than the stipulated prices. By an express provision therein, those contracts are applicable "only to transactions consummated in the state of Wisconsin and not elsewhere;" and under them there is no sale of any merchandise made by the plaintiff, or any purchase thereof made by any party from the plaintiff. Neither is there any provision therein requiring the delivery or acceptance of any merchandise by any party thereto under circumstances which can be deemed to constitute a transaction in interstate commerce. If sec. 133.25, Stats., is valid then, although no *contractual* obligation can, of course, be imposed on the defendant by a contract to which it is not a party, the defendant's conduct in violation of sub. (5), of sec. 133.25, Stats., is nevertheless actionable in view of the provisions therein, that such conduct "is unfair competition and is actionable at the suit of any person damaged thereby"—"whether or not the person so advertising, offering for sale or selling is a party to such contract." By reason of those provisions, it is wholly immaterial in so far as the plaintiff's cause of action for relief under sub. (5), of sec. 133.25, Stats., is concerned, that defendant is not a party to, or contractually obligated under, the fair-trade contracts made between the plaintiff and its dealers as authorized by sub. (3), of sec. 133.25, Stats. Consequently, as the plaintiff is not seeking herein to enforce

any contractual obligation assumed by the defendant, and its right to relief is not based or dependent upon any contract for the sale or shipment of its merchandise from some other state into Wisconsin, it is immaterial, in so far as plaintiff's cause of action against defendant is concerned, whether the plaintiff's sales of its merchandise to wholesale or retail dealers, under other contracts, than its fair-trade contracts under sec. 133.25 (3), Stats., constitute interstate commerce. Its fair-trade contracts under that subsection and the inhibitions applicable under the Fair Trade Act by reason of the existence of such contracts do not affect interstate commerce. *Johnson & Johnson v. Weissbard* (N. J. Court of Errors and Appeals, decided April 30, 1937), 191 Atl. 873. Under those circumstances the Federal Anti-Trust Act in restraint of monopolies and trusts is not involved in this action, and such cases as *Dr. Miles Medical Co. v. John D. Park & Sons Co.* 220 U. S. 373, 31 Sup. Ct. 376, are not in point. On the contrary, there is applicable herein, this court's statement in *National Distilling Co. v. Cream City Importing Co.* 86 Wis. 352, 356, 56 N. W. 864,—

"The plaintiff's cause of action is in no legal sense dependent upon or affected by the alleged illegality of the trust or combination, because the illegality, if any, is entirely collateral to the transaction in question, and the court is not called upon in this action to enforce any contract tainted with illegality or contrary to public policy."

And there is likewise applicable the rule that "the owner of a patent or a trade-mark can protect his property and enforce his rights against a trespasser and an infringer, even though he may be engaged in business which is in restraint of trade." *Weyman-Bruton Co. v. Old Indian Snuff Mills* (D. C.), 197 Fed. 1015; *Northwestern Consol. Milling Co. v. William Callam & Son* (C. C.), 177 Fed. 786.

In support of its contention that sub. (5), of sec. 133.25, Stats., does not attempt to delegate legislative power to private individuals, and is therefore not unconstitutional and

void because of any such delegation, the appellant relies on the decisions in *Old Dearborn Distributing Co. v. Seagram-Dist. Corp. (McNeil v. Jos. Triner Corp.)* 299 U. S. 183, 57 Sup. Ct. 139, 81 L. Ed. 109; affirming *Seagram-Dist. Corp. v. Old Dearborn Distributing Corp.* 363 Ill. 610, 2 N. E. (2d) 940, and *Jos. Triner Corp. v. McNeil,* 363 Ill. 559, 2 N. E. (2d) 929, 933; *Kunsman v. Max Factor & Co.* and *Pep Boys v. Pyroil Sales Co.* 299 U. S. 198, 57 Sup. Ct. 147, 81 L. Ed. 122; affirming *Max Factor & Co. v. Kunsman,* 5 Cal. (2d) 446, 55 Pac. (2d) 177; and *Pep Boys v. Pyroil Sales Co.* 5 Cal. (2d) 784, 55 Pac. (2d) 194, 1186; *Johnson v. Weissbard, supra; Bourjois v. Dorfman,* 273 N. Y. 167, 7 N. E. (2d) 30. The decisions in some of those cases were not announced until after the entry of the judgment under review herein. All of those cases involved state statutes in which there were provisions substantially similar to subs. (3) and (5), of sec. 133.25, Stats. The gist of the theory of that section, as well as of the similar statutes in other states, is, as the supreme court of Illinois said in *Jos. Triner Corp. v. McNeil, supra,* "that the manufacturer of a trade-marked article sold in competition with articles of similar nature, who has designated a fair price at which he, as well as his distributor and retailer, can make a fair profit, has a property right in the good will toward his product which he has created, and that it is sound public policy to protect that property right against destruction by others who have no interest in it except to employ it in a misleading manner for the purpose of deceiving the public." To the same effect see *Max Factor & Co. v. Kunsman, supra.* In holding that there is no unlawful delegation of legislative power under such provisions as subs. (3) and (5), of sec. 133.25, Stats., the supreme court of Illinois said in *Jos. Triner Corp. v. McNeil, supra,*—

"The Fair Trade Act of this state does not even attempt to fix or delegate to others the right to fix the price at which

any commodity may be sold in the market. . . . Only in the event that manufacturers or distributors elect to avail themselves of its provisions does the statute come into actual operation. This does not mean that the act took effect upon the approval of any authority other than the legislative branch of our state government. *Commonwealth v. Goldburg,* 167 Ky. 96, 180 S. W. 68. When the Fair Trade Act was passed by the general assembly it was a complete statute, in no manner dependent for approval or disapproval by any person or group of persons. The defendant's contention that the statute unlawfully delegates legislative power is without merit."

Those conclusions evidently met with the approval of the United States supreme court when it said in *Old Dearborn Distributing Co. v. Seagram-Dist. Corp., supra,*—

"We find nothing in this situation to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others. . . ."

Sec. 133.25, Stats., was likewise a complete and effective statute upon its enactment, and there was no occasion for any further act or the exercise of any power of a legislative nature in order to complete or render that section effective as a law. Under and by virtue of the provisions in sec. 133.25, Stats., and particularly those contained in subs. (3) and (5) thereof (quoted in margin [1]), they were applicable without

---

[1] Sub. (3): "Except as provided in subsections (4) and (6), no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed a contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce by reason of any of the following provisions contained in such contract:

"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(b) That the vendee or producer shall require that any person to whom delivery of a commodity is made for the purpose of resale

any further action which was legislative in nature, whenever there existed a state of facts which was within those provisions, including the acts constituting the unfair competition which is made actionable thereunder. In other words, upon and by virtue of solely the enactment and publication of ch. 52, Laws of 1935, in which sec. 133.25, Stats., is included, those provisions, including sub. (5) thereof, were in full force and effect, so that "wilfully and knowingly" advertising, offering for sale, or selling a commodity at less than a minimum stipulated resale price, under the circumstances and conditions stated in the Fair Trade Act, constitutes "unfair competition and is actionable" thereunder. The acts of private parties in entering into such a contract and stipulating a price therein constituted but facts in contemplation of which sec. 133.25, Stats., was enacted, and upon the existence of which the terms of sub. (5) thereof were to be applicable. Under those circumstances, those acts were no more legislative in character than are any other acts or conduct of private parties, which afford the basis and occasion for the application of a statute under the terms thereof. In neither instance are the consequences that the statute has become applicable, and conduct in violation thereof has become actionable, due to the exercise of any legislative power on the part of a private party.

Although the provisions in subs. (3) and (5), of sec. 133.25, Stats., are substantially like the provisions on the same subject in the Fair Trade Acts of California, Illinois, and New York, which have been held valid, the respondent

---

shall agree that the latter will not, in turn, resell except at the price stipulated by the vendor or vendee."

Sub. (5): "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract referred to in subsection (3), whether or not the person so advertising, offering for sale or selling is a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

contends that sec. 133.25, Stats., cannot be upheld as an act to prevent unfair competition and protect trade-mark owners because the intent of that section differs materially from the intent of the Fair Trade Acts, as disclosed by the titles thereto, in those other states. It is true that while the titles to their acts read, "An Act to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a trade-mark, brand or name," it is declared in sec. 133.27, Stats., that the intent of secs. 133.25, and 133.17 to 133.185, Stats., "is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices under which fair and honest competition is destroyed or prevented." However, respondent has apparently overlooked that the title of the act by which sec. 133.25, Stats., was created, in connection with other sections, reads, "An Act to create section 133.185 and sections 133.25 to 133.27; to amend sections 133.19 and 133.20 of the statutes, relating to fair trade practices and unfair discrimination, and providing a penalty." When that title is considered in connection with the intent "to foster and encourage competition by prohibiting unfair and discriminatory practices under which fair and honest competition is destroyed or prevented," declared in sec. 133.27, Stats., it is obvious that the declared legislative intent in enacting sec. 133.25, Stats., can fairly be considered to include the protection of "trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a trade-mark, brand or name" as is stated in the titles to the California, Illinois, and New York acts. It is true that, in so far as the words "to safeguard the public against the creation or perpetuation of monopolies," which appear in the declaration of intent in sec. 133.27, Stats., are

concerned, they are more applicable to secs. 133.17 to 133.185, Stats., which are specified in sec. 133.27, Stats., in conjunction with sec. 133.25, Stats.; and the subject matter of which is "Unfair discrimination in trade; unlawful selling" (sec. 133.17); "Same; unlawful buying" (sec. 133.18); "Secret rebates; unfair trade practice; prohibited; penalty" (sec. 133.185). But the intent declared by those words is also applicable to some extent to sec. 133.25, Stats., in so far as power is conferred by sub. (7) (a) thereof upon the department of agriculture and markets to set aside contracts made under sub. (3) thereof, and declare them to be in restraint of trade when, on a hearing pursuant to complaints filed, it finds them to be unfair and unreasonable as to the stipulated minimum resale price provisions. In that respect, it is the intent of sec. 133.25, Stats., also "to safeguard the public against the creation or perpetuation of monopolies," as stated in sec. 133.27, Stats. It follows that that declaration of intent does not compel the conclusion that it was not the intent of sec. 133.25, Stats., to afford the same protection to the owners of trade-marks as was intended under the Fair Trade Acts of California, Illinois, and New York.

Respondent contends that sec. 133.25, Stats., cannot be sustained as legislation prohibiting resales below cost, because there is nothing therein in regard to such resales; and also contends that it is an unconstitutional price-fixing act because of the powers given to the department of agriculture and markets in sub. (7) (a) thereof: It is true that there is no requirement in the statute that the price stipulated in contracts authorized under sub. (3) thereof must bear any relation to cost or reasonableness; but respondent errs in assuming that the statute is a price-fixing act or that any power to fix prices is vested thereby in the department of agriculture and markets. The Fair Trade Act does not fix prices or require that prices be fixed. It does not regulate anything

or anybody. It is permissive only. It is limited to merchandise identified by an exclusively owned trade-mark, brand, or name, and sold in free competition with other goods of the same class. It does not embrace bulk commodities. Contracts between producers and between distributors are not allowed thereby. There cannot be any horizontal contracts. They must be vertical from the producer down, and not among producers or among wholesalers or among retailers. It allows a single producer or owner of commodities sold under his trade name or trade-mark, and distributors thereof, to make, at their option, contracts stipulating minimum resale prices for such commodities when sold at retail by or under such trade name or trade-mark, to the end that distribution thereof may be facilitated by insuring dealers a profit, and that good will be protected by keeping known and identified merchandise free from deceptive use such as "loss leader" and "bait selling," and thus cheapening it in the public estimation. Therefore, it is not the primary purpose of the Fair Trade Acts to merely prohibit price cutting for the purpose of regulating prices, but rather to prohibit that practice in a legitimate legislative attempt to afford protection to the validly-acquired rights of others. *Max Factor & Co. v. Kunsman, supra; Jos. Triner Corp. v. McNeil, supra.* As the United States supreme court said in *Old Dearborn Distributing Co. v. Seagram-Dist. Corp., supra,* in passing upon the Illinois Fair Trade Act, section 1 thereof (our sub. (3)) "does not attempt to fix prices, nor does it delegate such power to private persons. It permits the designated private persons to contract with respect thereto. It contains no element of compulsion, but simply legalizes their acts, leaving them free to enter into the authorized contract or not as they may see fit;" and section 2 of the Illinois act (our sub. (5).) "does not deal with the restriction upon the sale of the commodity *qua* commodity, but with that

restriction because the commodity is identified by the trademark, brand or name of the producer or owner." Although there are widely differing views as to the economic aspects and wisdom of such legislation, it was within the province of the legislature to conclude that unrestrained price competition in such identified merchandise and the use thereof as "bait" and "leaders" are not desirable, and that the way to prevent such injurious practices and the resulting evils was by permitting contracts to be made stipulating minimum resale prices, and to protect these contracts by making interference with their operation civilly actionable if it results in damage, as is provided in sec. 133.25, Stats. The apparent purposes and objects of that legislation did not include and it was not solely intended thereby to prohibit resales below cost, or to prescribe price fixing at an amount bearing some particular relation to costs. Consequently, that there are no provisions in the act in regard to such sales does not affect the validity thereof. Neither is its validity impaired by the provisions in sub. (7) (a). That provision does not authorize the department of agriculture and markets to fix a resale price. It merely authorizes the department to hear the parties as to why that contract should not be set aside on the filing of a complaint that a contract containing provisions authorized under sub. (3), of sec. 133.25, Stats., is unfair and unreasonable; and "if upon such hearing the department" shall find that such contract is unfair and unreasonable as to its minimum resale price provisions, then it "may by special order declare such contract to be in restraint of trade." That clearly does not confer any power to fix a price. Its sole and obvious purpose is to empower the department to declare such a contract to be in restraint of trade if it finds the minimum resale provisions thereof to be "unfair and unreasonable," and to thus prevent abuses under sec. 133.25, Stats., by perversion thereof into a price-fixing measure.

Thus instead of authorizing price fixing, sub. (7) (a) of the statute authorizes an effective check of any abuse in that respect, in furtherance of the declared intent in sec. 133.27, Stats., "to safeguard the public against the creation or perpetuation of monopolies," which was considered above. In view of the fact that it is not the purpose of sub. (7) (a), of sec. 133.25, Stats., to authorize the department of agriculture and markets to fix a price, and that the purposes of sec. 133.25, Stats., are as stated above, cases like *Williams v. Standard Oil Co.* 278 U. S. 235, 49 Sup. Ct. 115, are not in point. The statute under consideration in that case required an applicant for a permit to sell gasoline to state the prices at which he proposed to sell, and if they were not approved by an official state superintendent, then they were to be determined by that official, subject to a review by a commissioner and the courts. Because the court concluded that the sole purpose of the statute was to empower the superintendent to fix the prices, it was held unconstitutional. That conclusion is clearly not applicable to sub. (7) (a), of sec. 133.25, Stats., which merely authorizes a proper state department to declare contracts made under the Fair Trade Act to be in restraint of trade if it finds the minimum resale price provision therein to be unfair or unreasonable.

Respondent also contends that sec. 133.25, Stats., is void because of an arbitrary and discriminatory exemption under sub. (8) thereof, which provides, "This section shall not apply to any co-operative society or association not organized for profit." Respondent argues that if "the primary aim of the law is to protect the property,—namely, the good will,—of the producer, which he still owns" (as the United States supreme court said in the *Old Dearborn Distributing Co. v. Seagram-Dist. Corp., supra*), then the provision in sec. 133.25 (8), Stats., exempting co-operative societies and associations not organized for profit is unreasonable and so

arbitrary or discriminatory as to be violative of the Fourteenth amendment, and render the entire act void. It is true that that exemption is void if there is no proper basis because of which it can be held that such a classification is germane to the legislation under consideration. Although contracts between a co-operative society and its members have been considered of such nature, under some circumstances, as to entitle them to a peculiar status in the law because of which legislation may provide protection or exemptions in respect thereto, which are denied to the contracts of all others (*Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936; *State ex rel. Saylesville C. Mfg. Co. v. Zimmerman,* 220 Wis. 682, 265 N. W. 856; *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Asso.* 276 U. S. 71, 48 Sup. Ct. 291, 72 L. Ed. 473), the validity of such legislation is nevertheless subject to the rule that such protection or exemptions by legislation can only be sustained when the classification and resulting protection or exemptions can be held germane to the general and public purpose and object of the particular legislation in question. *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468; *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 183 N. W. 687; *State ex rel. Kempinger v. Whyte,* 177 Wis. 541, 188 N. W. 607; *Watts v. Rent-a-Ford Co.* 205 Wis. 140, 236 N. W. 521, 237 N. W. 276; *Whipple v. South Milwaukee,* 218 Wis. 395, 400, 261 N. W. 235. That cannot be held as to the exemption in question, under the facts in this case. That exemption is not confined to merely transactions between such an association or society and its members. It is equally applicable to sales made by such associations or societies in competition with other retail dealers to the public at large, but as to which such exempted associations or societies would be permitted to sell at less than minimum resale prices stipulated under the Fair Trade

Act. Thus there would be defeated its "primary aim to protect the property,—namely, the good will,—of the producer." Consequently, that classification, instead of being germane to, is inconsistent with the general and public purpose and object of the Fair Trade Act, and therefore sub. (8), of sec. 133.25, Stats., is void because of the arbitrary and discriminatory exemption of the associations and societies mentioned therein. However, there is applicable to that sub. (8) the provision in sec. 3, of ch. 52, Laws of 1935, by which sec. 133.25, Stats., was created, that "If any provision of this act or the application thereof to any person or circumstance is held unconstitutional, the remainder of the act and the application of such provision to other persons or circumstances shall not be affected thereby." Even without that legislative declaration, it is evident that the remaining provisions of the act, standing alone, would constitute a complete law by which the legislative intent and purposes thereof could be accomplished; and that they are separable provisions, and were probably intended to stand even if sub. (8) is invalid. But when in addition to the fact that those conclusions are warranted by the remaining provisions, there is also such a legislative declaration as in sec. 3, of ch. 52, Laws of 1935, then it serves to assure the courts that the separable provisions of an act, which is valid in part, may be properly sustained "without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of part." *Hill v. Wallace,* 259 U. S. 44, 71, 42 Sup. Ct. 453, 459. Then, as was said in *Williams v. Standard Oil Co., supra,* at page 242, "We begin, in the light of the declaration, with the presumption that the legislature intended the act to be divisible; and this presumption must be overcome by considerations which make evident the inseparability of its provisions or the clear probability that the invalid part being eliminated the legis-

lature would not have been satisfied with what remains." As it does not appear from sec. 133.25, Stats., itself, that the legislature intended it to be effective only as an entirety, and would not have enacted the valid part alone, there is applicable the well-established rule that "the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect. . . ." *State ex rel. Wisconsin Tel. Co. v. Henry,* 218 Wis. 302, 316, 260 N. W. 486.

It follows that the remaining provisions in sec. 133.25, Stats., upon which the appellant's right to recover is based, are not rendered ineffective by the invalidity of sub. (8) thereof; and that upon the facts found by the court, as stated above, the appellant was entitled to judgment permanently enjoining the defendant, and its agents, servants, and employees, as prayed for in the complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion filed herein.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.