Argued September 17; reversed and remanded October 21, 1947

# THE BORDEN COMPANY *v.* SCHREDER
### 185 P. (2d) 581

*Hugh L. Biggs,* of Portland (with Hart, Spencer, McCulloch & Rockwood and Frederick H. Torp, of Portland, on brief), for appellant.

*George A. Rhoten,* of Salem (Rhoten & Rhoten on brief), for respondent.

Before LUSK, Acting Chief Justice, and BELT, KELLY, BAILEY and HAY, Justices.

BELT, J.

This is a suit to enjoin the defendant from offering for sale or selling a distinctive trade-marked com-

modity called "Hemo" at a price less than the fixed minimum resale price established pursuant to the Fair Trade Act of Oregon (§§ 43-401 to 43-405, inclusive, O. C. L. A.) From a decree dismissing the suit, the plaintiff has appealed.

In January, 1942, The Borden Company, a corporation, placed on the market for sale in Oregon a malted milk preparation called "Hemo," in free and open competition with other commodities of the same general class, at what it claims was an established minimum resale price of 59 cents per one pound tin container. Vast sums were expended by The Borden Company in nationally advertising such commodity and in establishing its good will in connection therewith. Borden Company consistently maintained this fixed price in Oregon and elsewhere in the nation. There has never been any change in the minimum resale price. Borden sought to invoke the protection of the Fair Trade Act by entering into contracts with various retail dealers in the state who agreed, in the language of the Act, not to "resell such commodity at less than the minimum price stipulated by the seller," viz.: 59 cents.

The defendant Schreder and his wife own and operate a grocery store and meat market in Salem, Oregon, under the style and trade name of "Schreder's Four Star Market." Defendant Schreder has continuously offered for sale and sold "Hemo," in trade-marked one pound containers, at a price of 53 cents ever since his firm commenced handling the commodity in January, 1942. He asserts that he will continue to sell "Hemo" at such price, unless restrained by court from doing so. At various times Borden, through its representatives, notified Schreder of the fixed mini-

mum resale price as established in contracts with other retail dealers in the state and demanded that he cease violation of the Act, but he refused to sell "Hemo" at any price other than 53 cents per pound. Schreder admits that he had knowledge of the existence of contracts between Borden and retail dealers, stipulating the minimum resale price of 59 cents. Schreder was not a party to any contract fixing the minimum resale price, although he was requested by Borden to sign one.

In the Circuit Court defendant challenged the constitutionality of the Fair Trade Act on various grounds, but on appeal has abandoned such contentions. Ever since the decision of the Supreme Court of the United States in *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, decided in 1936, 299 U. S. 183, 81 L. ed. 109, 57 Sup. Ct. 139, 106 A. L. R. 1476, sustaining the constitutionality of the Fair Trade Act of Illinois, the validity of such legislation has not been considered an open question. That the constitutionality of similar acts has been sustained throughout the nation, see authorities in Note, 125 A. L. R. 1336.

■ It is argued by defendant that since he was not a party to any Fair Trade contract with Borden, he is not bound by the terms thereof prohibiting the sale of "Hemo" at less than the stipulated price. The fallacy of this contention lies in the assumption that the relief sought by plaintiff is based on any contractual relationship with the defendant. This suit sounds in tort. Plaintiff asserts that Schreder violated the Fair Trade Act and is guilty of "unfair competition," as defined therein, in that he sold a trademarked commodity at less than the resale maintenance price. In other words, Borden's suit is based on violation of a statute and not on breach of contract.

Section 1 of the Act as amended, Chapter 113, Oregon Laws 1937, codified as § 43-401, O. C. L. A., provides that a contract wherein the buyer agrees that he "will not resell such commodity at less than the minimum price stipulated by the seller" shall not, by reason thereof, be deemed in violation of the law.

Section 2 of the Act (§ 43-402, O. C. L. A.) provides:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section 43-401, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

■ The object of introducing in evidence contracts entered into with other retail dealers was to show that Borden had, by virtue of the Fair Trade Act, established a minimum resale price of "Hemo" in this state.

■ We see no merit in the contention that there is no proof that such Fair Trade contracts were executed by authorized agents of Borden. One of the contracts purports to have been executed by the plaintiff through its bonded representative, W. B. Land. The same is true relative to other contracts received in evidence, which were executed by The Borden Company acting through Ray Wilson, L. B. Legacy, and L. Perry—all of whom were bonded representatives of the plaintiff corporation. Assuming that none of these representatives was authorized to act, it appears by overwhelming and uncontradicted evidence that Borden ratified their acts. Borden, from its principal office in New York, advised Schreder by letter that it was a party to Fair Trade contracts with numerous retailers

in Oregon and that the established minimum resale price of "Hemo" was 59 cents per pound. The objection as to the form of the contracts is extremely technical and we think merits no discussion. 52 Am. Jur. 651, § 180.

It was essential for plaintiff, in order to invoke the protection of the Fair Trade Act of this state, to show that it had established a fixed resale price of "Hemo." In some jurisdictions proof of the execution of only one contract with a retail dealer is sufficient to show an established resale price. *Houbigant Sales Corp. v. Woods Cut Rate Store,* 123 N. J. Eq. 40, 196 A. 683.

■ It is further urged—assuming that such contracts are valid—that under the termination clause of the contract, the retailer was relieved of the obligation to restrain from selling "Hemo" at less than the established resale price, and that since he is not a party to any Fair Trade contract, it would be unreasonable to require him to conform to the established price. This argument is based upon the false premise that a signer of a Fair Trade contract, upon termination of the same, has the right to sell "Hemo" at less than the fixed price. If a buyer could sell at "cut throat" prices merely by terminating his contract with the owner of the trade-marked commodity, the purpose and spirit of the Fair Trade Act would be destroyed.

■ Since Schreder had notice and knowledge of Fair Trade contracts between Borden and other retailers in this state establishing a fixed resale price of "Hemo" and nevertheless continued to sell such commodity at less than the established price, we can only conclude that he "wilfully and knowingly" violated the provisions of the Fair Trade Act of this state and ought to be enjoined from doing so.

The mere fact that the defendant did not sign any Fair Trade contract would not relieve him of the duty to conform to the established resale price of "Hemo," after having knowledge of such established price. *Goldsmith v. Johnson & Co.,* 176 Md. 682, 7 A. (2d) 176, 125 A. L. R. 1339; *Weco Products Co. v. Sam's Cut Rate, Inc.,* 296 Mich. 190, 295 N. W. 611; *Iowa Pharmaceutical Ass'n v. May's Drug Stores Inc.,* 229 Iowa 554, 294 N. W. 756; 52 Am. Jur. 656, § 191; 1 Callman on Unfair Competition and Trade Marks, § 24.3 (b).

As said in the *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.* case, supra:

"We are here dealing not with a commodity alone, but with a commodity plus the brand or trade-mark which it bears as evidence of its origin and of the quality of the commodity for which the brand or trade-mark stands. Appellants own the commodity; they do not own the mark or the good will that the mark symbolizes. And good will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation. Good will is a valuable contributing aid to business—sometimes the most valuable contributing asset of the producer or distributor of commodities. And distinctive trade-marks, labels and brands are legitimate aids to the creation or enlargement of such good will. It is well settled that the proprietor of the good will 'is entitled to protection as against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trade-mark without his consent, and authority.' McLean v. Fleming, 96 U. S. 245, 252. 'Courts afford redress or relief upon the ground that a party has a valuable interest in the good-will of his trade or business, and in the trade-marks adopted to maintain and extend it.' Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412. The ownership of the good will, we repeat,

remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of the identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition.' "

Much has been written about the soundness of the economic theory reflected in this kind of legislation as affecting public welfare, but that is a legislative and not a judicial question. Suffice it to say, it was within the power of the legislature to enact the Fair Trade Act, and it is the duty of this court to construe it so as to effectuate its purpose.

The decree of the Circuit Court is reversed and the cause is remanded with direction to enjoin the defendant from offering to sell or selling "Hemo," as a trade-marked commodity, at less than the minimum established resale price of 59 cents per pound. There was no evidence introduced affording a basis for the assessment of damages, hence none will be awarded.

Plaintiff is entitled to costs and disbursements.