[L. A. No. 22168.   In Bank.   Mar. 17, 1953.]

THE CAL-DAK COMPANY (a Corporation), Appellant, v. SAV-ON DRUGS, INC. (a Corporation), Respondent.

Landels & Weigel, O'Connor & O'Connor and Stanley A. Weigel for Appellant.

Wright, Wright, Green & Wright, Loyd Wright and Herschel B. Green for Respondent.

CARTER, J.—Plaintiff appeals from an order denying its application for a preliminary injunction in an action seeking injunctive relief and damages.

Plaintiff is a California corporation engaged in the manufacture and sale of clothes baskets under the trade name "Sav-Ur-Bak Clothes Basket." Defendant is a California corporation engaged in this state in the operation of retail drugstores. Defendant bought some of the clothes baskets from plaintiff's jobber in this state and has offered them for sale at retail in its stores at prices below the retail price fixed by plaintiff in agreements with its jobbers. Plaintiff commenced this action asking for an injunction and alleged that it had suffered damages because of defendant's conduct. Its application for a preliminary injunction was denied.

It is clear according to plaintiff's complaint that defendant's acts in offering the baskets for sale below the price fixed is a violation of the Fair Trade Act (Bus. & Prof. Code,

§ 16900 et seq.) for thereunder a contract relating to the resale of a commodity which bears a trademark may provide that the buyer will not resell except at the price stipulated by the vendor.* ▮▮ And the violation of the contract is unfair competition and actionable even though the violator is not a party to the contract—did not sign it.[1] Defendant is not a party to the contract between plaintiff and its jobber.

Defendant, however, invokes the Sherman Anti-Trust Act (15 U.S.C.A., § 1) as invalidating such contracts and urges that the Miller-Tydings Amendment to that act[2] purporting

---

*"(a) No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this State by reason of any of the following provisions which may be contained in such contract:

"(1) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(2) That the vendee or producer require the person to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"(b) Such provisions in any contract imply conditions that such commodity may be resold without reference to such agreement in the following cases:

"(1) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

"(2) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"(3) By any officer acting under the orders of any court." (Bus. & Prof. Code, § 16902.)

[1] "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." (Bus. & Prof. Code, § 16904.)

[2] "*Provided*, That nothing contained in sections 1-7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45 of this title: *Provided further*, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other." (15 U.S.C.A., § 1.)

to exempt such contracts from the Sherman Act does not extend to nonsigners as interpreted by the United States Supreme Court in *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U.S. 384 [71 S.Ct. 745, 95 L.Ed. 1035, 19 A.L.R.2d 1119]. It was held in that case that where interstate commerce is involved such contracts violate the Sherman Act and that the Miller-Tydings amendment thereto, while exempting the parties to the contract from the Sherman Act, does not extend to nonsigners of the contract. Hence the state Fair Trade Act embracing nonsigners can have no application where interstate commerce is involved. The sole issue presented on the application for a preliminary injunction was, therefore, whether interstate commerce was involved, thus making the federal statutes applicable.

On this question, as above shown, the baskets were manufactured in California by plaintiff, a California corporation, and were sold by plaintiff to its jobber in this state and its jobber sold and delivered them to defendant, who offers them for retail sale, all in this state. There are additional factors, however, as appears from defendant's answer where it is alleged: ". . . plaintiff's said clothes baskets are sold by jobbers throughout the United States. That said jobbers own and operate their establishments within and without the State of California. That a great majority of plaintiff's said clothes baskets are sold to Jewel Tea Company in Chicago, Illinois. That the said Jewel Tea Company sells plaintiff's said clothes baskets throughout the United States. That plaintiff maintains an office and is conducting business in the City of Chicago, State of Illinois. That in the purchase of materials used by plaintiff in the manufacture of its clothes baskets outside the State of California, the shipment by plaintiff of its said clothes baskets to its office and place of business in Chicago, Illinois, the shipment by plaintiff of said clothes baskets to jobbers in Illinois and in other states and in the transaction of business in its Chicago office, plaintiff has been since 1937 and is now continuously engaged in interstate commerce."

The application for a preliminary injunction was denied on August 10, 1951. This appeal was taken from the order of denial. Thereafter Congress amended (approved July 19, 1952) the Miller-Tydings amendment to the Sherman Act to exempt from the latter, state laws such as ours giving validity to price fixing contracts and making them binding on non-

signers; it in effect nullifies the Schwegmann case.* ▮ It is not disputed that under the 1952 law nonsigners are bound by our state Fair Trade Act, *supra*, and thus thereunder a preliminary injunction could have been properly granted regardless of whether or not interstate commerce is involved. ▮ This is true because a preliminary injunction (here we have an order denying such an injunction) is aimed at preventing future conduct—conduct after the issuance of the injunction and likely to occur during the pendency of the action. ▮ "Relief by injunction operates in futuro, and the right to it must

---

*"That it is the purpose of this Act to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and *to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto.* It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agreements, and activities in or affecting interstate or foreign commerce . . .

"(2) Nothing contained in this Act or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale.

"(3) Nothing contained in this Act or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements *whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable* at the suit of any person damaged thereby.

" '(4) Neither the making of contracts or agreements as described in paragraph (2) of this subsection, nor the exercise or enforcement of any right or right of action as described in paragraph (3) of this subsection shall constitute an unlawful burden or restraint upon, or interference with, commerce.

" '(5) Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other.' " (Emphasis added.) (Pub. Law 542, 82d Congress, ch. 745, 2d sess.)

be determined as of the date of decision by an appellate court." (*American Fruit Growers* v. *Parker,* 22 Cal.2d 513, 515 [140 P.2d 23]; also *Bautista* v. *Jones,* 25 Cal.2d 746, 754 [155 P.2d 343]; *Thompson* v. *City of Los Angeles,* 82 Cal.App.2d 45 [185 P.2d 393]; *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489 [42 P.2d 972]; *Brophy* v. *Employers Retirement System,* 71 Cal.App.2d 455 [162 P.2d 939]; *Diederichsen* v. *Sutch,* 47 Cal.App.2d 646 [118 P.2d 863].)

Defendant asserts, however, that it does not intend to do the acts charged during the pendency of the action and there is nothing to show it does; hence a preliminary injunction is not proper. The application for the injunction was made and decided upon the verified pleadings of the parties and while plaintiff alleged that defendant threatened to and would continue his improper conduct, that was denied by defendant and the parties rested their cases and the trial court based its denial of the injunction solely on the ground that, as interstate commerce was involved, no injunction would lie in any event under the Sherman Act, the Miller-Tydings amendment and the Schwegmann case, which as we have seen is no longer the crucial issue.  ■  The trial court has never passed on the question of whether defendant threatened to continue its acts during the pendency of the action. Hence the appropriate procedure is to reverse the order denying the preliminary injunction and remand the case to the trial court for such proceedings as are proper in the light of the 1952 change in the law.

■  There still remains in the case the question of the damages claimed by plaintiff by reason of defendant's alleged improper conduct prior to the 1952 change in the law, which, as above noted, requires the determination as to whether or not interstate commerce was involved, because if it was, defendant's conduct would not have been improper. Those questions are not before the court at this time, however, because we are considering an appeal from an order denying a preliminary injunction. Moreover, inasmuch as the issue of whether interstate commerce is involved is a mixed factual and legal question, it would be more appropriate to determine this issue on the trial of the action rather than on the bare allegations in the pleadings.

The order is reversed and the cause is remanded to the trial court for further proceedings as may be proper, giving consideration to the 1952 change in the law.

Gibson, C. J., Traynor, J., and Spence, J., concurred.