[S. F. Nos. 18830, 19068. In Bank. Dec. 29, 1955.]

SCOVILL MANUFACTURING COMPANY (a Corporation), Respondent, v. SKAGGS PAY LESS DRUG STORES (a Corporation), Appellant.

(Two Cases.)

Fitzgerald, Abbott & Beardsley and Edward B. Kelly for Appellant.

Kean & Ingram and Bernard E. Ingram for Respondent.

Landels & Weigel, Stanley A. Weigel and Herman T. Van Mell as Amici Curiae on behalf of Respondent.

SHENK, J.—This is an appeal by the defendant Skaggs Pay Less Drug Stores from a judgment in favor of the plaintiff Scovill Manufacturing Company in an action based on the Fair Trade Act of 1931 as amended in 1933 and 1941 (Bus. & Prof. Code, §§ 16900-16905). The plaintiff sought to enjoin the retail sale of its products at prices below those specified by it as the producer. There is also an appeal from a prior order granting a temporary injunction in the same case. This order was merged in the judgment, is not appealable and should be dismissed.

The plaintiff has entered into contractual arrangements with its buyers and wholesalers wherein the prices at which certain of its products must be sold are specified. These contracts purport to be in compliance with and not in violation of section 16902 of the Business and Professions Code. That section provides in part: "No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this State by reason of any of the following provisions which may be contained in such contract: (1) That the buyer will not resell such commodity except at the price stipulated by the vendor. (2) That the vendee or producer require the person to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or . . . vendee."

The defendant has been selling, offering and advertising for sale, fair trade products of the plaintiff at prices less than those specified in the plaintiff's fair trade contract schedules. Although the defendant is not a party to any of the plaintiff's fair trade contracts, it is claimed that it is nevertheless bound to comply as to prices with the provisions of section 16904 of the Business and Professions Code. That section provides: "Wilfully and knowingly advertising, offering for sale or

selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.''

The sales contemplated in the present case are transactions which have a substantial effect upon interstate commerce, and in the absence of federal statutory exemptions the contracts imposing fair trade arrangements on such transactions would be in violation of the Sherman Anti-Trust Act. (26 Stats. 209 [1890].) However, the Miller-Tydings Amendment thereto (50 Stats. 693 [1937] ; 15 U.S.C.A., §§ 1-7) provides for such an exemption in the case of voluntary arrangements and in the McGuire Act (66 Stats. 632 [1952] ; 15 U.S.C.A., § 45[a]) Congress extended the exemption to nonsigner provisions of such contracts entered into pursuant to state statutes.

The defendant attacks the constitutionality of both the Fair Trade Act and the McGuire Act. It contends that the Fair Trade Act violates the due process clauses of the state and federal Constitutions in that it is an arbitrary and unreasonable exercise of the police power; that it delegates the state's legislative power to commodity producers, and that the meaning of the phrase ''fair and open competition'' (Bus. & Prof. Code, § 16902) is fatally uncertain. It is claimed that the act unlawfully delegates legislative authority in violation of article IV, section 1 of the California Constitution vesting legislative power in the Legislature only. Claims of invalidity based on similar grounds are directed against the McGuire Act. The defendant asserts that the act violates the due process clause of the federal Constitution in that it is arbitrary and unreasonable; that the meaning of the expression ''free and open competition'' (15 U.S.C.A., § 45 [a] [2]) is uncertain, and that it constitutes an unlawful delegation of congressional power over interstate commerce to the state legislatures.

All of the constitutional objections raised by the defendant have been expressly or by necessary implication decided against it. In *Max Factor & Co.* v. *Kunsman* (1936), 5 Cal.2d 446 [55 P.2d 177], this court held that the Fair Trade Act, and in particular the provision as to nonsigners, was a proper exercise of the police power; that it was not arbitrary nor unreasonable legislation, and that it was not a denial of due process of law nor of the equal protection of

the laws. That decision (see also *Pyroil Sales Co., Inc.* v. *Pep Boys, M. M. & J.*, 5 Cal.2d 784 [55 P.2d 194]) was in effect affirmed unanimously by the United States Supreme Court in *Pep Boys, M. M. & J.* v. *Pyroil Sales Co.*, 299 U.S. 198 [57 S.Ct. 147, 81 L.Ed. 122], on the authority of *Old Dearborn Distributing Co.* v. *Seagram Distillers Corp.* (1936), 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476]. The last case cited upheld the validity of the Illinois Fair Trade Act, which is substantially identical with the California act.

■ The validity of the McGuire Act has also been declared as against similar attacks. In *Cal-Dak Co.* v. *Sav-on Drugs, Inc.* (1953), 40 Cal.2d 492 [254 P.2d 497], this court recognized the McGuire Act as extending the area of control of fair trade legislation to nonsigners engaged in interstate commerce. In *Schwegmann Bros. Giant Super Mkts.* v. *Eli Lilly & Co.* (1953), 205 F.2d 788, the constitutionality of the act and of the Louisiana Fair Trade Act were upheld against charges of deprivation of due process of law and unlawful delegation of congressional powers. During the pendency of the appeal in the present case the Supreme Court refused to review the decision in the Schwegmann case. (*Schwegmann Bros. Giant Super Market* v. *Eli Lilly & Co.*, 346 U.S. 856 [74 S.Ct. 71, 98 L.Ed. 369]; reh. den. 346 U.S. 905 [74 S.Ct. 217, 98 L.Ed. 404].) The decision of the Court of Appeals in the Schwegmann case is a clear and unqualified approval of the McGuire Act and we are bound thereby on matters relating to the federal law. (*Douglas Aircraft Co., Inc.* v. *Johnson,* 13 Cal.2d 545 [90 P.2d 572]; *In re Smith,* 193 Cal. 337 [223 P.2d 971].) The constitutionality of the McGuire Act is therefore no longer open to question for the purpose of the present case.

From the foregoing it also appears that the question whether the Fair Trade Act is a reasonable and nondiscriminatory exercise of the police power in the field of interstate commerce has been covered by federal and state legislation and settled by court decisions. It is urged, however, that the changing economic conditions and circumstances since the decision in the Max Factor case as well as experience in the application of fair trade acts since that time have resulted in a general acknowledgment that such legislation no longer serves a proper purpose, and that a trend of recent decisions in other states requires a reexamination of the constitutional questions involved. In the Schwegmann case a similar contention was made and rejected by the Court of Appeals. (*Schwegmann*

*Bros. Giant Super Mkts.* v. *Eli Lilly & Co., supra,* 205 F.2d 788, 790.)

Fair trade legislation containing nonsigner provisions substantially the same as those first adopted in California has since been enacted in 44 of our sister states. Only in the States of Texas, Vermont and Missouri has such legislation not been enacted. In 16 states the legislation has been upheld by their courts of last resort. (*Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.* (1942), 128 Conn. 596 [24 A.2d 841]; *Max Factor & Co.* v. *Kunsman* (1936), *supra,* 5 Cal.2d 446; *Klein* v. *National Pressure Cooker Co.* (1949), 31 Del. 459 [64 A.2d 529]; *Pepsodent Co.* v. *Krauss Co.* (1942), 200 La. 959 [9 So.2d 303]; *Goldsmith* v. *Medd Johnson & Co.* (1939), 176 Md. 682 [7 A.2d 176]; *W. A. Sheaffer Pen Co.* v. *Barrett* (1950), 209 Miss. 1 [45 So.2d 838]; *General Electric Co.* v. *Packard-Bamberger & Co., Inc.* (1953), 14 N.J. 209 [102 A.2d 18], 1954 Trade Cases, para. 67,643; *Bourjois Sales Corp.* v. *Dorfman* (1937), 273 N.Y. 167 [7 N.E.2d 30, 110 A.L.R. 1411]; *Lilly & Co.* v. *Saunders* (1939), 216 N.C. 163 [4 S.E.2d 528, 125 A.L.R. 1308]; *Borden Co* v. *Schreder* (1947), 182 Ore. 34 [185 P.2d 581]; *Burche Co.* v. *General Electric Co.* (1955), 382 Pa. 370 [115 A.2d 361], 1955 Trade Cases, para. 68,078; *Miles Laboratories, Inc.* v. *Owl Drug Co.* (1940), 67 S.D. 523 [295 N.W. 292]; *Frankfort Distillers Corp.* v. *Liberto* (1950), 190 Tenn. 478 [230 S.W.2d 971]; *Sears* v. *Western Thrift Stores of Olympia, Inc.* (1940), 10 Wn.2d 372 [116 P.2d 756]; *Weco Products Co.* v. *Reed Drug Co.* (1937), 225 Wis. 474 [274 N.W. 426].) In five states the highest courts have held their fair trade acts to be partially or totally invalid. (*Liquor Store, Inc.* v. *Continental Distilling Corp.* (1949, Fla.), 40 So.2d 371; *Grayson-Robinson Stores, Inc.* v. *Oneida, Ltd.* (1953), 209 Ga. 613 [75 S.E.2d 161]; *Shakespeare Co.* v. *Lippman's Tool Shop Sporting Goods Co.* (1952), 334 Mich. 109 [54 N.W.2d 268]; *McGraw Electric Co.* v. *Lewis & Smith Drug Co.* (1955), 159 Neb. 703 [68 N.W.2d 608]; *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* (1955), —— Ark. —— [275 S.W.2d 455].) In Florida fair trade legislation has been reenacted.

In reviewing the decisions of the courts there appears to be a definite division of opinion in the state courts with a rather overwhelming majority in favor of the constitutionality of such enactments. In the federal courts there is no such divergence. All of them have upheld the constitutionality of the legislation. It is true that in recent decisions the Supreme

Courts of Nebraska, Georgia and Arkansas (*McGraw Electric Co.* v. *Lewis & Smith Drug Co., Inc.* (Neb., Feb. 11, 1955), *supra,* 68 N.W.2d 608; *Cox* v. *General Electric Co.* (Jan. 10, 1955), 211 Ga. 286 [85 S.E.2d 514], 1955 Trade Cases, para. 67,934; *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* (Ark. Feb. 7, 1955), *supra,* 275 S.W.2d 455) have declared local fair trade acts to be unconstitutional. On the other hand even more recent Supreme Court decisions in Pennsylvania and Wisconsin have reasserted the constitutionality of the local acts. (*Burche Co.* v. *General Electric Co.* (June, 1955), *supra,* 382 Pa. 370, 1955 Trade Cases, para. 68,087; *Bulova Watch Co.* v. *Anderson* (May 3, 1955), 270 Wis. 21 [70 N.W.2d 243], 1955 Trade Cases, para. 68,036]); and the United States Supreme Court continues in its refusal to reconsider its original determination that fair trade legislation violates no federal constitutional prohibitions. (*Schwegmann Bros. Giant Super Market* v. *Eli Lilly & Co., supra,* 346 U.S. 856; reh. den. 346 U.S. 905.)

It is beyond question that this state has aligned itself with the great majority of its sister states and with the decisions of the federal courts in sustaining the constitutionality of fair trade laws, first in the Max Factor case and then impliedly in the later case of *Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953), *supra,* 40 Cal.2d 492. Notwithstanding the division of opinion in the Max Factor case the decision in that case upholding the statute has been the established law of the state for nearly 20 years and in the orderly administration of justice should be deemed controlling until otherwise provided by duly enacted legislation. (See *County of Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 392 [196 P.2d 773].)

It is claimed by the defendant that this court receded from its holding in the Max Factor case in *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners* (1953), 40 Cal.2d 436 [254 P.2d 29]. In that case we held the Dry Cleaners Act of 1945 (Bus. & Prof. Code, §§ 9560-9567) invalid: first, as an improper exercise of the police power, and secondly, as unlawfully delegating legislative power to fix prices to a board composed of interested members of the industry. The present case is definitely dissimilar in both respects. As held in the Max Factor case and here confirmed the Fair Trade Act is a proper exercise of the police power by the Legislature in the protection of private contractual rights relating to the manufacture and sale of certain classified com-

modities deemed by the Legislature to require freedom from governmental interference in the economic field. The Dry Cleaners case expressly recognized that to be the basis for the decision in the Max Factor case. (40 Cal.2d 436 at p. 447.) ■■■ Nor is there a delegation of legislative power to fix prices in the present case. The act is only a legislative declaration that contracts between private parties establishing certain retail prices is not against public policy.

Although the question of delegation of legislative power was not expressly considered in the Max Factor case, the United States Supreme Court in *Old Dearborn Distributing Co.* v. *Seagram Distillers Corp., supra,* 299 U.S. 183, 194 rejected the contention that in fair trade acts "there is an unlawful delegation of power to private persons to control the disposition of property of others." The contention that such delegation does not accord due process of law or violates provisions of state constitutions which vest legislative power in the Legislature only (similar to Cal.Const., art. IV, § 1) has been rejected in several state courts. (*Triner Corp.* v. *McNeil,* 363 Ill. 559 [2 N.E.2d 929]; *Goldsmith* v. *Mead Johnson & Co.,* 176 Md. 682 [7 A.2d 176]; *Johnson & Johnson* v. *Weissbard,* 121 N.J.Eq. 585 [191 A. 873]; *Lilly & Co.* v. *Saunders,* 216 N.C. 163 [4 S.E.2d 528, 125 A.L.R. 1308]; *Weco Products Co.* v. *Reed Drug Co., supra,* 225 Wis. 474; see also 11 Am.Jur., Const. Law, § 221, p. 933.) Here the acts of private parties in entering into contracts for the sale of commodities constitute the facts in contemplation of which the Legislature acted, and upon the existence of which the provisions of the enactment were to be applicable. The private contracts are no more legislative in character than are other acts or conduct of private parties undertaken as a prerequisite to the application of a statute. The consequence that the statute has become applicable, and conduct in violation thereof has become actionable is in no way due to the exercise of any assumed legislative power on the part of the contracting parties. (See *Weco Products Co.* v. *Reed Drug Co., supra,* 225 Wis. 474 [224 N.W. 426].) We conclude that there is no delegation of the legislative function in violation of constitutional prohibitions.

■■■ The claim of indefiniteness of the expression "fair and open competition" (Bus. & Prof. Code, § 16902) was not expressly considered by this court in the Max Factor case. A similar claim as to the Illinois statute was rejected by the Supreme Court in the Old Dearborn case. (299 U.S. at p.

196.) That and similar expressions are used in all fair trade legislation and we are referred to no case, state or federal, which has held that they are fatally uncertain. The defendant relies on the decision of this court in *People* v. *Building Maintenance etc. Assn.*, 41 Cal.2d 719 [264 P.2d 31] (see also *Cline* v. *Frink Dairy Co.*, 274 U.S. 445 [47 S.Ct. 681, 71 L.Ed. 1146]), which holds invalid for uncertainty an exception to the Cartwright Act (Bus. & Prof. Code, §§ 16720 et seq.) such as arrangements or combinations the object of which is "to conduct operations at a reasonable profit or to market at a reasonable profit those products which cannot otherwise be so marketed." (Bus. & Prof. Code, § 16723.) Such exceptions were condemned because a "reasonable profit" was considered too indefinite a concept to permit those concerned to apply the exceptions with certainty and that it could not be ascertained in what circumstances the exceptions were to apply.

In the present case there is no similarity in the language used nor in the contingency which conditions the application of the exception. The clear language of the clause in question contemplates that there are on the market commodities produced by others which are so similar in character to the fair traded items that they provide competition which is not hampered by unlawful trade restraints. That meaning is dictated not only by the plain language of the statute but also by the rule that the meaning of language is to be ascertained "from the objective sought to be achieved by a statute as well as the evil to be prevented." (*Wotton* v. *Bush*, 41 Cal.2d 460, 467 [261 P.2d 256].)

The defendant claims that the desired competitive conditions do not exist where a fair trade act results in unreasonably high prices, or where the general market condition permits unreasonably high prices, or where price leadership prevails in the case of a product much in demand or short in supply, and that the phrase "fair and open" is uncertain because it allows the existence of such unintended conditions. The statute is not susceptible of the interpretation the defendant would accord to it for the purpose of making it uncertain. "Fair and open" relates only to the manner of competing, not to the results. If economic conditions, not the result of unlawful restraints or collusion, prevail to create a favorable market to the producer or retailer, no reason appears why the statute does not apply. There is no requirement concerning a reasonable price level which

might have resulted in the same uncertainty as ''reasonable profits'' in the Building Maintenance case (*supra,* 41 Cal.2d 719). The existence of conditions of which the defendant complains might invoke inquiry under the Cartwright Act (Bus. & Prof. Code, §§ 16720 et seq.) but could not confuse the meaning of ''fair and open competition.'' The parties concerned in the present case can determine the applicability of the Fair Trade Act with sufficient certainty to satisfy the requirements of due process of law.

▉ Other contentions of the defendant relate to the sufficiency of the evidence in support of the findings of the trial court that the commodities in question are in ''free and open competition.'' The defendant points to testimony relating to claimed ''price leadership,'' ''relative uniformity'' of prices, and ''high level'' markups leading to ''exorbitant profits'' in fair trade operations. It claims that the testimony requires inferences to be drawn to the effect that such operations are collusive and do not afford ''free and open competition'' among commodity producers. The testimony to which the defendant refers is susceptible of conflicting inferences. Aided by other testimony as to numerous products and producers in the field and the presumption that private transactions have been fair and regular (Code Civ. Proc., § 1963, subd. 19), the trial court was not required as a matter of law to find that unlawful trade restraints existed or that the products were not in ''fair and open competition.'' ▉ Where conflicting inferences may be drawn by the trier of fact findings made thereon are binding on appeal.

The appeal from the preliminary restraining order is dismissed. The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—For the reasons and upon the grounds set forth in my dissenting opinion in *General Electric Co.* v. *Superior Court, post,* p. 897 [291 P.2d 945] (S. F. 19317), insofar as applicable here, I would reverse the judgment.

Appellant's petition for a rehearing was denied January 25, 1956. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.