BEDFORD CORPORATION *v.* JOHN D. PRICE, CITY TREASURER, *etc.*

(No. 7488)

Submitted October 26, 1932.    Decided November 1, 1932.

*Brown, Jackson & Knight,* for relator.
*Charles Ritchie* and *Phillip H. Hill,* for respondent.

MAXWELL, JUDGE:

The purpose of this proceeding in mandamus is to determine whether the city of Charleston must allow a discount of two and one-half per centum upon taxes paid before the date on which they are due.  Under a provision of its charter (sec. 52, chapter 4, Acts of the Legislature of 1929, Municipal Charters), the taxes of the city are collectible semi-annually, the first half of the taxes for a given year is due on the

first day of November of that year, and the second half is due the first of May, following. The charter does not provide for a discount for prompt payment.

The relator, an owner of property in the city of Charleston, conceiving that by virtue of a recent act of the legislature of West Virginia it was entitled to discount its municipal taxes due November 1, 1932, if it paid the amount thereof on or before said date, tendered to the clerk of the city an amount sufficient to cover its said taxes, less a discount of two and one-half per centum. The clerk declined to accept the discounted amount. Relator, by this proceeding, seeks to compel the clerk to accept this discounted amount in discharge of the portion of relator's taxes due November 1st.

The legislative enactment upon which relator relies in support of its position herein is to be found in section 7, chapter 12 of the Acts of the Extraordinary Session of the Legislature of 1932. That section provides for the collection and payment of all county, district and municipal taxes in two installments, the first installment to be due on the first day of November of the year for which the taxes are laid, and the second to be due on the first day of the following May. The section further provides: ''All taxes paid on or before the date such taxes are payable, including both first and second installments, shall be subject to a discount of two and one-half per centum.''

The principal grounds of respondent's demurrer to the petition of the relator raise constitutional questions, first, that the said legislative act, in so far as it relates to anything other than semi-annual or quarterly payment of property taxes levied by the state and its sub-divisions, is not within the purview of the call of the governor for the extraordinary session, and therefore in violation of section 7 of Article VII of the state constitution, which provides that at an extraordinary session the legislature shall not enter upon any business except that stated in the proclamation by which it was called together; and second, that the act, in so far as it relates to municipalities, embodies a subject not indicated in its title, and, therefore, is in violation of section 30 of Article VI of

676

the constitution of West Virginia, which provides: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title."

We are of opinion that the said first ground of constitutional challenge of the act, namely, that portions thereof are not within the purview of the governor's call, is not well taken. The fifth item of business which the governor summoned the legislature to consider and act upon, was : "A bill authorizing semi-annual and quarterly payment of all property taxes levied by the state and its subdivisions." That municipalities are subdivisions of the state is not questioned, but it is said that there is nothing in the said item five of the chief executive's call nor in any other item thereof which would authorize legislation at the extraordinary session providing for a discount on taxes for prompt payment thereof. This proposition is too narrow and restricted. The enactment of a law providing for the semi-annual payment of taxes was of course within both the spirit and the letter of the said item five of the governor's call. The details of the manner of payment and collection of semi-annual installments of taxes were of course not attempted by the governor in his message. Those matters were properly left for legislative discretion. As an incident to the main matter, it was plainly for the legislature to determine whether there should be a discount on promptly paid taxes. And this is especially true in the light of the fact that for many decades it has been the policy of the state to allow such discount. The same system has obtained in at least some of the municipalities of the commonwealth. When, in a proclamation convening a legislature in extraordinary session, certain items of business are specified by the governor, there can be no sucessful challenge of the legislature's right to deal with such items in the manner it sees fit, so long as it does not violate any organic law. *State Road Commission of West Virginia* v. *West Virginia Bridge Commission et al.,* 112 W. Va. 514, 166 S. E. 11, decided at this term of court.

The second constitutional challenge is more serious. Are the provisions in the act with reference to municipal taxes

and discount thereon within the title of the act? The title of this act (chapter 12, Acts Extraordinary Session of 1932, being conference committee substitute for Senate Bill No. 9— originating in the conference committee) reads:

"AN ACT to amend and re-enact sections six, seven, and ten of article nine of chapter eleven and section eighteen of article six of chapter eleven of the official code of West Virginia, one thousand nine hundred and thirty-one, relating to tax levies and collections."

Examination of the four separate sections of the Code enumerated in the said title discloses that no one of them makes reference in any manner to the collection of municipal taxes. No person, whether public official or private citizen, upon reading the said title would have received the slightest intimation that the pending bill proposed to make drastic changes with reference to the collection of municipal taxes. And a painstaking examination of the four sections of the Code proposed to be amended and re-enacted would have been all the more convincing that what the legislature was proposing to do by the said bill was to amend the law only with reference to state, county and district (magisterial and school) taxes. The constitutional provision that an act shall not embrace more than one object and that shall be expressed in the title (Constitution, Article VI, section 30) does not render it necessary that the title shall descend to particulars, but it does require that the title shall be broad enough to give a fair and reasonable index to all the purposes of the act. *Brozka* v. *County Court*, 111 W. Va. 191, 160 S. E. 914. If an act contain subject matter which does not constitute a detail of the object stated in the title, or is not germane to the said object, such portion of the act will be deemed unconstitutional and void. *State* v. *Haskins*, 92 W. Va. 632, 115 S. E. 720. Though it is settled law that a title to an act amending and re-enacting existing statutory provisions is sufficient if it enumerates and identifies the sections proposed to be amended, it is equally well settled that if the amendment goes beyond the subject matter of the sections proposed to be amended,

the title of the amendatory act is not sufficient if it merely enumerates the old sections. It must go further and indicate the new matter proposed to be inserted. This basic rule was clearly stated by Judge Brannon in *Roby* v. *Sheppard,* 42 W. Va. 286, 290, 26 S. E. 278, 280:

> "Where an act amending a certain chapter and section or sections of the Code, or any other act, in its title refers to the chapter and section or sections of the Code or the act amended specifically, that is sufficient, so far as it concerns the requirement that the object shall be expressed in the title. Of course the new matters brought in by the amendment must not be foreign to the subject of the prior legislation, but congruous and germane to such prior legislation, such as might have been put into that legislation under the original title, in the case of a separate act, or in the code chapter when first made; for, if foreign to the prior legislation, it would violate that clause in the Constitution saying that an act shall have but one object. As it would then be another object, it would call for a distinct original act."

While the constitutional provision under consideration will be liberally construed to sustain a legislative enactment, and all doubt resolved in favor of the constitutionality of the act (*State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504; *State* v. *Scarbrough,* 108 W. Va. 9, 150 S. E. 219), we must not lose sight of the fact that the said constitutional provision is mandatory. *Simms* v. *Sawyers,* 85 W. Va. 245, 101 S. E. 467. Its provisions may not be treated indifferently by legislator or judge. It was well said in the case just cited that if the said constitutional provision be treated merely as directory, the purpose of the requirement would thereby be nullified.

This wholesome constitutional requirement, in almost the same language, is found in the constitutions of many of the states of the American union. Cooley's Constitutional Limitation, 7th Ed., p. 202. In discussing the object of this pro-

vision of organic law, the learned author at page 205 of his said treatise, says:

"It may therefore be assumed as settled that the purpose of these provisions was: first, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

Under a constitutional provision almost exactly the same as the one here under consideration, the supreme court of Tennessee, in the case of *Mayor and Alderman of Knoxville* v. *Lewis*, 12 Lea, 180, held that a provision in an act for the collection of municipal taxes was void as not embraced in the title which recited that it was "an act to provide more just and equitable laws for the assessment and collection of revenue for state and county purposes * * *." There was a similar holding by the supreme court of Delaware in the case of *Equitable Guaranty & Trust Company* v. *Donahoe*, 3 Tennewill's Delaware Reports, page 191. These holdings, in our judgment, evidence sound application of the constitutional provision under consideration.

For the reasons thus set forth, we are of opinion that that portion of section 7 of chapter 12 of the Acts of the Extraordinary Session of the Legislature of 1932, which deals with municipal taxation involves a matter not reasonably disclosed in the title of the act and is therefore void because in contravention of section 30 of Article VI of the Constitution of West Virginia. Other portions of the act are unaffected, as the said section of the constitution also provides that if any object shall be embraced in an act which is not expressed in its title, the act shall be void only to so much thereof as shall not be so expressed. The said portion of the act, for the

reasons stated, being unconstitutional and void, the charter provisions of the city of Charleston with reference to the collection of taxes, stand now in full operation and effect just as they were prior to the Extraordinary Legislative Session of 1932.

It is a most solemn duty and a serious responsibility for a court to declare a legislative act unconstitutional. Such will not be done if it can be avoided. If it is possible to construe an act to harmonize with the constitution, such course will be taken. Every reasonable presumption and intendment is indulged by the courts to sustain legislative action.

But where the constitutionality of an act is challenged, and, upon careful deliberation and consideration the court is clearly of opinion that the legislature in passing the act, however patriotic and commendable may have been its primary purpose, violated a constitutional inhibition, the court would be recreant to its sworn duty if it did not declare null and void so much of the act as runs counter to constitutional mandate. In our judgment there is no other course herein.

Therefore, the relator not having legal right to discount the portion of its taxes due the city of Charleston November 1, 1932, a writ of mandamus as prayed for is refused.

*Writ refused.*