WECO PRODUCTS CO. v. SAM'S CUT RATE, INC.

1. STATUTES—TITLE OF ACT—CONSTITUTIONAL LAW—OBJECT OF ACT.
    Under constitutional requirement that no law shall embrace more than one object which shall be expressed in its title, if the act under consideration centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the title is sufficient as the title is but a descriptive caption, directing attention to the subject matter which follows (Const. 1908, art. 5, § 21).

2. SAME — TITLE OF ACT — CONSTITUTIONAL LAW — TRADE-MARKS — PRICE-FIXING.

Title of act reading ''An act to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name'' is not violative of constitutional requirement as to expression of one object in the title where language of the act does not show any objects which are foreign to the statement in the title and does not contain matter which should not be expected in an act bearing such a title (Const. 1908, art. 5, § 21; Act No. 50, Pub. Acts 1937).

3. SAME—IMPLIED REPEAL—TITLE OF ACT.

It is unnecessary that title of an act express that an effect of the act is to repeal another act by implication.

4. SAME—TITLE OF ACT.

Where the subject of an act itself is embraced in the title, all legal consequences necessarily flowing from it will, for the purpose of constitutional requirement that object of act be expressed in the title, be regarded as embraced in the title (Const. 1908, art. 5, § 21).

5. TRADE-MARKS AND TRADE-NAMES—INJUNCTION—FAIR TRADE ACT— PRICE-FIXING.

Injunction restraining sale of toothbrushes and tooth paste bearing plaintiff's trade-mark below retail price set up in standard contract which had not been signed by defendants although signed by upwards of 1,000 other retail dealers could not properly be issued in absence of a finding on the part of the trial court that violations of such contract had been made by defendants wilfully and knowingly and where compliance therewith had been made from day bill of complaint was served and for 18 days prior to issuance of temporary injunction as defendants' conduct was thereby shown to have been a good-faith compliance with the fair trade act after knowledge of its existence (Act No. 50, Pub. Acts 1937).

6. EQUITY—INJUNCTION—REFUSAL OF PLAINTIFF TO DO EQUITY.

Manufacturer of toothbrushes and tooth paste, who sought to enjoin retailers from selling products bearing its trade-mark at less than retail prices set by manufacturer but refused to repurchase such commodities from the retailers who had purchased them from others, was not entitled to injunction, since plaintiff's refusal to do equity forfeited any right to equitable relief (Act No. 50, Pub. Acts 1937).

7. TRADE-MARKS AND TRADE-NAMES—INJUNCTION—COMPLIANCE WITH
    FAIR TRADE ACT.
    Continuation of temporary injunction requiring defendant re-
    tailers to maintain prices set by manufacturer of toothbrushes
    and tooth paste should not have been ordered where defendants
    stated to trial judge and in oral argument in Supreme Court
    that they have no intention of disregarding provisions of the
    fair trade act and are willing to continue maintenance of
    plaintiff's minimum prices (Act No. 50, Pub. Acts 1937).

Appeal from Wayne; Callender (Sherman D.),
J. Submitted October 15, 1940. (Docket No. 72,
Calendar No. 41,242.) Decided January 6, 1941.

Bill by Weco Products Co., a corporation, against
Sam's Cut Rate, Inc., and Randolph Drug Co., cor-
porations, for injunction under fair trade act.
From decree granting injunction, defendants appeal.
Reversed and injunction dissolved.

*Edward S. Rogers, William T. Woodson, James
H. Rogers* and *Charles C. Andrews* (*Hill, Hamblen,
Essery & Lewis,* of counsel), for plaintiff.

*Seymour J. Frank,* for defendants.

BUSHNELL, J. ₁This appeal involves Act No. 50,
Pub. Acts 1937 (Comp. Laws Supp. 1940, §§ 9829-1–
9829-5, Stat. Ann. §§ 19.321–19.325), provisions of
which are given in the footnote hereto.* This act,

* "SECTION 1. No contract relating to the sale or resale of a
commodity which bears, or the label or container of which bears,
the trade-mark, brand, or name of the producer or owner of such
commodity and which is in fair and open competition with com-
modities of the same general class produced by others shall be
deemed in violation of any law of the State of Michigan by reason
of any of the following provisions which may be contained in
such contract:
   "1. That the buyer will not resell such commodity at less than
the price stipulated by the vendor.

which became effective October 29, 1937, was passed
by the legislature of Michigan shortly after decision
by the Supreme Court of the United States in *Old
Dearborn Distributing Co.* v. *Seagram-Distillers
Corp.*, 299 U. S. 183 (57 Sup. Ct. 139, 81 L. Ed. 109,
106 A. L. R. 1476). The *Seagram* decision upheld
the constitutional validity of sections 1 and 2 of the
fair trade act of Illinois (Smith-Hurd Rev. Stat.
1935, chap. 121½, § 188 *et seq.;* Illinois State Bar
Statute, 1935, chap. 140, § 8 *et seq.*).

Plaintiff, a manufacturer of toothbrushes and
tooth paste bearing the registered trade-mark of
''Dr. West's,'' filed a bill of complaint on November
29, 1937, just one month after the effective date of
the act in question, against defendants for the sole

---

''2. That the producer or vendee of a commodity require upon
the sale of such commodity to another, that such purchaser agree
that he will not, in turn, resell at less than the price stipulated
by such producer or vendee.

''Such provisions in any contract shall be deemed to contain or
imply conditions that such commodity may be resold without ref-
erence to such agreement in the following cases:

''1. When closing out the owner's stock for the purpose of dis-
continuing delivery of any such commodity: *Provided, however,*
That such stock is first offered to the manufacturer of such stock,
or his duly authorized agent, at the prevailing invoice stock price,
at least ten days before such stock shall be offered for sale to
the public.

''2. When the goods are damaged or deteriorated in quality, and
notice is given to the public thereof.

''3. By any officer. acting under the orders of any court.

''SEC. 2.   Wilfully and knowingly advertising, offering for sale
or selling any commodity at less than the price stipulated in any
contract entered into pursuant to the provisions of section 1 of
this act, whether the person so advertising, offering for sale or
selling is or is not a party to such contract, is unfair competition
and is actionable at the suit of any person damaged thereby, and
may be enjoined by a court of competent jurisdiction.

''SEC. 3.   This act shall not apply to any contract or agreement
between producers or between wholesalers or between retailers as
to sale or resale prices.   The payment of patronage dividends by
farmers' cooperative associations or companies on the basis of sales
of commodities sold under the provisions of this act shall not be
construed as a violation of the provisions of this act.''

purpose of enjoining them from selling plaintiff's trade-marked products below the retail prices set up in a so-called standard contract, prepared by plaintiff and signed by many of its customers. Defendants, however, had not signed such an agreement. See section 2 of Act No. 50, *supra.*

The circuit court issued an order to show cause upon the filing of the bill of complaint and, after a hearing on December 18, 1937, issued a temporary order restraining the defendants from selling plaintiff's commodities at less than the minimum established prices. A hearing on the merits was begun on November 21, 1939, and a written opinion was filed by the trial judge on January 12, 1940, in which he determined that the temporary injunction issued on December 18, 1937, should be continued in full force and effect. A decree was entered in conformity with this opinion on January 26, 1940, from which defendants appeal. .

Plaintiff, desiring to avail itself of the provisions of the act in question, prepared the "standard contract" referred to, which was thereafter signed by over 1,000 retail dealers. This contract established the minimum retail selling price of Dr. West's toothbrushes at 47 cents and Dr. West's tooth paste at 19 cents, or two tubes for 37 cents. A letter of transmittal tendering one of these contracts was received by defendants on November 2, 1937, in which they were informed that plaintiff was availing itself of the provisions of the act. There was nothing in this communication as to the effective date of the act. Defendants did not sign the contract and later informed plaintiff's divisional manager that they were not executing any fair trade contracts and would sell their merchandise at any price they pleased. Plaintiff produced affidavits of shoppers showing

that "Dr. West's" products were sold in defendants' stores between November 20th and 24th at a price of 33 cents for the toothbrushes and 9 cents for tooth paste. Defendants, in opposition, sought to prove that during the period in which the alleged violations occurred they were without knowledge that Act No. 50 was in effect and, in support of this contention, produced a letter from the clerk of the house of representatives sent to them under date of August 2, 1937, in reply to their inquiry, which stated:

"The date that this law is effective is November 30, 1937, or ninety days after final adjournment."

Defendants had purchased, prior to November 2, 1937, a large quantity of "Dr. West's" products, but not directly from plaintiff. Defendants' president and treasurer testified that on the same day that service of the summons and bill of complaint was made, defendants put into effect the minimum prices stipulated by plaintiff in its standard contract. Defendants have purchased products directly from plaintiff since sometime in the year 1938 and prior to the trial of this suit on its merits, and it is undisputed that the retail prices as fixed by plaintiff have been observed by defendants at all times since November 29, 1937.

Constitutional attack upon the act is narrowed to the sole question of its title, and decision as to constitutionality is therefore limited to this question.

Section 21 of article 5 of the Constitution of the State of Michigan (1908) provides:

"No law shall embrace more than one object, which shall be expressed in its title."

The title of the act in question is as follows:

"An act to protect trade-mark owners, distributors and the public against injurious and uneconomic

practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name."

Defendants argue that this title fails to indicate that the body of the act permits price fixing, and that the title does not mention a repeal by implication of section 558 of the penal code (Act No. 328, Pub. Acts 1931 [Stat. Ann. § 28.826]).

A recent consideration of the question of sufficiency of title and conformity to the constitutional requirement may be found in *MacLean* v. *State Board of Control*, 294 Mich. 45. In *Loomis* v. *Rogers,* 197 Mich. 265, 271, the court said:

"While it [the Covert act] contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.

"A title is but a descriptive caption, directing attention to the subject matter which follows."

A title which directs attention to the protection of trade-mark owners, et cetera, against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trademark is expressive of the purpose and scope of the enactment. Consideration of the language of the act does not show any objects which are foreign to the statement in the title and contains matter which should be expected in an act bearing such a title. We are satisfied that the title of the act in question does not violate the constitutional requirement.

For the purposes of this opinion it is unnecessary to decide the repealing effect of Act No. 50. As-

suming that the act did, by implication, repeal another, it is not necessary that such an effect be expressed in the title. A like question was involved in the consideration of the Illinois fair trade act under a constitutional restriction similar to our own. In *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.,* 363 Ill. 610 (2 N. E. [2d] 940), that court said, at page 613:

"Neither does the act violate section 13 of article 4 of the Constitution of this State by amending the Illinois antitrust act without including that subject in the title. The fair trade act is complete within itself and does not purport, either in its title or in the body thereof, to amend or revive any other act. Even though it may by implication modify or repeal prior existing statutes, that fact does not constitute a violation of the constitutional provisions. The Constitution does not require that all legal effects of an act, such as a repeal by implication of a former act, shall be stated in the title. Where the subject of the act itself is embraced in the title all legal consequences necessarily flowing from it will, for the purpose of constitutional requirement, be regarded as embraced in the title. *Village of Averyville* v. *City of Peoria,* 335 Ill. 106 (166 N. E. 488); *People* v. *Borgeson,* 335 Ill. 136 (166 N. E. 451)."

See, also, 59 C. J. p. 807, note 97a.

The next question is whether the issuance of the temporary injunction on December 18, 1937, was proper, in view of the language of section 2 of the act. This section requires that the defendant be guilty of "wilfully and knowingly" advertising or selling at less than the stipulated prices. The trial judge made no such determination. As to this requirement he said:

"As to whether such violations during said period were 'wilful or knowing,' this court makes no de-

termination for the reason that the act is not a criminal act and the only penalty provided and prayed for in this case is equitable by way of injunction.''

The circumstances disclosed by this record negative ''wilful and knowing'' violation of the act. Although it cannot be held that defendants could rely upon the mistake contained in the letter of the clerk of the house of representatives, nevertheless there may be some justification for defendant's belief that the act did not become effective until November 30th. Furthermore, the establishment by defendants of the minimum sale prices on the very day the bill of complaint was served and the maintenance of such prices for 18 days prior to the issuance of the temporary injunction, and at all times thereafter, shows defendants' conduct to be good-faith compliance with the act. Without a finding by the trial judge of ''wilful and knowing'' violation of the act, no injunction could properly be issued. The temporary restraining order does not stand on solid ground and its issuance constituted an abuse of judicial discretion.

The act provides for certain exceptions as to sale of trade-marked commodities. See footnotes. Defendants' offer of resale of its ''Dr. West's'' products was refused by plaintiff, who gave as its reason:

''We did not sell you these goods and do not desire to purchase them from you. Our counsel advise us that since you are enjoined from selling these goods at prices less than the minimum prices set out in our contracts with other dealers under the Michigan fair trade act, that we are not compelled under the Michigan fair trade act to purchase these products from you.''

From the affidavits filed in connection with a motion to modify the restraining order, we are forced to conclude that, although plaintiff seeks equitable relief, it refused to do equity. The reasons advanced by plaintiff are not suggestive of good faith. The use of a temporary restraining order in this manner is repugnant to sound equitable principles. Plaintiff cannot use the restraining order to coerce defendants into continuing to stock its products. In this instance, plaintiff has, by its acts, forfeited any right to equitable relief.

Defendants have stated to the trial judge and in oral argument to this court that they have no intention of disregarding the provisions of the act and are willing to continue their maintenance of plaintiff's minimum prices. Under the circumstances disclosed in this record, the continuation of the temporary injunction should not have been ordered.

The decree entered to this effect is dissolved and held for naught, with costs to appellants.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, MC-ALLISTER, and BUTZEL, JJ., concurred with BUSHNELL, J.   WIEST, J., concurred in the result.