GENERAL ELECTRIC COMPANY, a
corporation, Plaintiff,

v.

Morris Samuel WENDER, doing business
as Modern Industries, Inc., Modern In-
dustries and Wender's Credit Jewelry,
Defendant.

Civ. A. No. 1868.

United States District Court
S. D. West Virginia.

May 6, 1957.

F. Paul Chambers, Charleston, W.
Va. (Jackson, Kelly, Holt & O'Farrell,
Charleston, W. Va., on the brief), for
plaintiff.

William R. Laird, III, Fayetteville,
W. Va., and Pat R. Hamilton, Oak Hill,
for defendant.

MOORE, Chief Judge.

This is a civil action instituted by
plaintiff for the purpose of obtaining an
injunction against defendant to prevent
retail sales by defendant of plaintiff's
trade-marked products at less than the
resale prices fixed by plaintiff in con-
tracts with other retailers.

Plaintiff must prevail if at all by
reason of the provisions of West Vir-
ginia's so-called "Fair Trade Act."

Defendant's answer raises the ques-
tion of whether or not the West Virginia
Statute is constitutional. It is further
alleged that defendant has no standing
in a court of equity because of its having
in various ways allegedly permitted to
be made, and connived with other dealers
in making other sales of its products in
West Virginia at cut rates. This defense
is of course factual and needs to be in-
quired into only if the vital constitutional
issue is decided adversely to defendant.

The title of the West Virginia Fair Trade Act which the legislature had before it when the act was passed is as follows:

"An Act to protect trade-mark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand, or name, through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed." W.Va.Laws 1937. c. 123.

This title is followed by the text of the act, which reads:

"Section 1. * * * The following terms, as used in this act, are hereby defined as follows:

"(a) 'Commodity' means any subject of commerce.

"(b) 'Producer' means any grower, baker, maker; manufacturer, bottler, packer, converter or processor.

"(c) 'Wholesaler' means any person selling a commodity other than a producer or retailer.

"(d) 'Retailer' means any person selling a commodity to consumers for use.

"(e) 'Person' means an individual, a corporation, a partnership, an association, a joint-stock company, a business trust or any unincorporated organization.

"Sec. 2. * * * No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the state of West

Virginia by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller.

"(b) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller.

"(c) That the seller will not sell such commodity:

"(1) to any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

"(2) to any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price.

"Sec. 3. * * * For the purpose of preventing evasion of the resale price restrictions imposed in respect of any commodity by any contract entered into pursuant to the provisions of this act (except to the extent authorized by the said contract):

"(a) The offering or giving of any article of value in connection with the sale of such commodity;

"(b) The offering or the making of any concession of any kind whatsoever (whether by the giving of coupons or otherwise) in connection with any such sale; or

"(c) The sale or offering for sale of such commodity in combination

with any other commodity, shall be deemed a violation of such resale price restriction, for which the remedies prescribed by section six of this act shall be available.

"Sec. 4. * * * No minimum resale price shall be established for any commodity, under any contract entered into pursuant to the provisions of this act, by any person other than the owner of the trademark, brand or name used in connection with such commodity or by a distributor specifically authorized to establish said price by the owner of such trade-mark, brand or name.

"Sec. 5. * * * No contract containing any of the provisions enumerated in section two of this act shall be deemed to preclude the resale of any commodity covered thereby without reference to such contract in the following cases:

"(a) In closing out the owner's stock for the bona fide purpose of discontinuing dealing in any such commodity and plain notice of the fact is given to the public; provided the owner of such stock shall give to the producer or distributor of such commodity prompt and reasonable notice in writing of his intention to close out said stock, and an opportunity to purchase such stock at the original invoice price, plus any transportation, storage or other legitimate or regular costs.

"(b) When the trade-mark, brand or name is removed or wholly obliterated from the commodity and is not used or directly or indirectly referred to in the advertisement or sale thereof;

"(c) When the goods are altered, second-hand, damaged, defaced, or deteriorated and plain notice of the fact is given to the public in the advertisement and sale thereof, such notice to be conspicuously displayed in all advertisements and to be affixed to the commodity;

"(d) But nothing contained in this article shall apply to sales by executors, administrators, receivers or assignees under a voluntary assignment for the benefit of creditors, trustees in bankruptcy or by any one acting under judicial process.

"Sec. 6. * * * Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

"Sec. 7. * * * This act shall not apply to any contract or agreement between or among producers, except as provided in subdivision (c) of section two of this act, or between or among wholesalers or between or among retailers as to sale or resale prices.

"Sec. 8. * * * If any provision of this act, or the application thereof to any person or circumstance, is held invalid, the remainder of the act, and the application of such provisions to other persons or circumstances, shall not be affected thereby.

"Sec. 9. * * * All acts or parts of acts inconsistent herewith are hereby repealed to the extent of such inconsistency.

"Sec. 10. * * * This act may be known and cited as the 'Fair Trade Act.'" W.Va.Laws 1937, c. 123, §§ 1–10.

Defendant was not a party to any contract with plaintiff establishing fair trade prices for plaintiff's products. It is not disputed that defendant has engaged in the sale of plaintiff's products at prices below the so-called "fair trade" prices stipulated in contracts made by plaintiff with one or more retailers of its products in West Virginia.

Defendant takes the position that the provision of section 6 of the act making

actionable sales of fair trade merchandise at less than the prices stipulated in certain contracts, insofar as it is made applicable to a person not a party to such contract, is unconstitutional. He asserts three grounds in support of this contention.

(1) That to make fair trade acts applicable to nonsigners of contracts is not a proper or legitimate exercise of the police power of the state, and hence an invasion of property rights without due process of law.

(2) ·That the West Virginia Fair Trade Act, being enacted in 1937, was void at the time of its enactment because contrary to the federal statute known as the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. Defendant concedes that had the West Virginia Fair Trade Act been reenacted after the passage of the Miller-Tydings Act, 15 U.S.C.A. § 1 and the McGuire Act, 15 U.S.C.A. § 45(a), legalizing in their federal aspect the making of such contracts as are described in the West Virginia Fair Trade Act, the objection here asserted would be without force; but contends that such reenactment was necessary to give it scope after the federal barrier was removed, and that without such reenactment the act is still void because of unconstitutionality in its inception.

(3) That the form· of the act violates a mandatory provision of· the Constitution of West Virginia which requires that every act of the legislature must bear a title expressive of .its objects; the exact language being. as follows.:

. "No act hereafter passed, shall embrace more than one· object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, * * *." W.Va.Const. Art. VI, § 30.

·[1] Defendant's· first contention· is effectively· answered by reference to the case of Old Dearborn Distributing Co. v., Seagram-Distillers Corp., 1936, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed: 109. This case dealt specifically with a non-signer provision of a state fair trade law, and it was held there that such a law does not infringe the doctrine of the previous decisions of the Supreme Court dealing with legislative price fixing; does not violate due process of law as an unlawful delegation of power to private persons to control the disposition of property of others; is not arbitrary, unfair, or unreasonable; and does not deny equal protection of the law. No argument is advanced which would take this case out of the orbit of the Dearborn case. I therefore reject this contention of defendant.

■ As to the second ground, it may be noted that courts are not unanimous in their conclusion as to the necessity for reenactment of a statute, ineffective when passed because in conflict with federal law, but subsequently made effective by federal legislation. There is language in the case of State v. Miller, 1909, 66· W.Va. 436, 66 S.E.. 522, which supports defendant's argument; and this case has been cited as authority for a point of view similar to defendant's in the case of Grayson Robinson Stores v. Oneida Limited, 1953,. 209 Ga. 613, 75 S.E.2d 161. However, the language in the Miller case was obviously dictum, and has moreover been criticized and rejected by the Fourth Circuit Court of Appeals in State of West Virginia v. Adams Express Co., 4 Cir., 1915, 219 F. 794, L.R.A.1916C 291. I conclude that the weight of authority, as well as the better reasoning, supports the view that it was unnecessary that the West Virginia Legislature reenact the state's fair trade act after its. provisions had been legalized in their interstate· aspect by the Miller-Tydings Act and the McGuire Act.

Defendant's third contention is much more serious.

■ The question of whether the title to the West Virginia Fair Trade Act is broad enough to support inclusion in the act of the non-signer provision has

not been passed on by the Supreme Court of Appeals of West Virginia; nor have I been able to find an instance in which a federal court has spoken as to a similar act so titled.

I have caused a search to be made in the library of the Supreme Court of Appeals of West Virginia to determine the extent and character of fair trade legislation nationally. From the data there available it has been ascertained that all the states but three have enacted Fair Trade Laws. These three states are, Missouri, Texas and Vermont. The laws enacted have all contained the non-signer provision. Sixteen other states have titles either exactly the same or similar in effect to the title of the West Virginia Act; that is, the titles speak of providing fair trade protection "through the use of voluntary contracts." These are Alabama, Delaware, Idaho, Indiana, Kansas, Maryland, Minnesota, Montana, Nebraska, North Carolina, Oklahoma, Oregon, Rhode Island, South Dakota, Utah and Wyoming. Florida's Fair Trade Act was originally so entitled, but after it was held by the Supreme Court of that state to be unconstitutional because of the restrictive title, it was reenacted with a broader title. It has since been held unconstitutional on other grounds.

Four states have fair trade acts with titles similar to the title of West Virginia's Fair Trade Act, except that the title concludes with the phrase, "and for other purposes," or words of like effect. These are, Arizona, Arkansas, Georgia and Nevada, Laws 1936, c. 11, A.R.S. § 44–1421 et seq.; Acts 1949, Act No. 303; Laws 1953, p. 549; St.1937, c. 48.

Twenty states (and now Florida also) have fair trade acts which do not specify in the title that the protection of fair trade practices is to be accomplished "through the use of voluntary contracts." These are, Colorado, Illinois, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia and Washington. One of these states (New York) has since reenacted the statute without any title.

Two states, Connecticut and Wisconsin, provide no titles whatever for their fair trade acts, and it is therefore assumed that the constitutions of those states do not so require.

Information relative to the California Fair Trade Act, Bus. & Prof.Code, § 16900 et seq., was not available at the library.

In only five instances has it been found that the constitutionality of a fair trade act has been challenged because of failure of its title to conform to constitutional requirements. Three cases are cited by plaintiff in support of constitutionality, and two by defendant against constitutionality.

One of the cases cited by plaintiff is that of Goldsmith v. Mead Johnson & Co., 1939, 176 Md. 682, 7 A.2d 176, 125 A.L.R. 1339. The original fair trade act of the state of Maryland (1935) contained no restrictive words in its title limiting its application to "voluntary contracts." However, the original act included the standard non-signer provisions. In 1937 the Maryland legislature passed a new fair trade act entitled as follows:

"An Act to repeal Chapter 212 of the Acts of 1935, codified as Sections 105, 106, 107, 108, 109 and 110, respectively, of Article 83 of Flack's 1935 Supplement to the Annotated Code of Public General Laws of Maryland, title 'Sales and Notices', sub-title 'Fair Trade Act', and to substitute therefor, for the purpose of correcting, clarifying and amplifying the Act so repealed, ten (10) sections, to be added to said Article and bear the same sub-title, to follow immediately after Section 104, and to be known as Sections 105, 106, 107, 108, 109, 110, 111, 112, 113 and 114, respectively, to protect trade-mark owners, producers, distributors and the general public against injurious and uneconomic

practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name, through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed." Md.Laws 1937, c. 239.

In deciding the Goldsmith case [176 Md. 682, 7 A.2d 179] the Court pointed out that the later act made reference to the sections of the code containing the original act, and concluded that the later act disclosed as its purpose the "correcting, clarifying and amplifying" of the Act of 1935. These considerations were given some weight in sustaining the constitutionality of the act.

The other case cited by plaintiff from a state the title of whose fair trade act contains the restrictive phrase "through the use of voluntary contracts", 43 Del. Laws, c. 201, 6 Del.C. § 1901 et seq., is that of Klein v. National Pressure Cooker Co., 1949, 31 Del.Ch. 459, 64 A.2d 529, 533. Unquestionably this case fully supports plaintiff's argument. However, very little is said by the court in explanation of its conclusion that "the words 'through the use of voluntary contracts' merely describe the method by which the desired protection against price-cutting is to be obtained" is reached.

A third case cited by plaintiff, Weco Products Co. v. Sam's Cut-Rate, 1941, 296 Mich. 190, 295 N.W. 611, is not applicable, since the Michigan Fair Trade Act, Comp.Laws, 1948, § 445.1 et seq., has a title which does not contain the restrictive words, "through the use of voluntary contracts."

The case of McGraw Electric Co. v. Lewis & Smith Drug Co., 1955, 159 Neb. 703, 68 N.W.2d 608, 618, cited by defendant dealt with a fair trade act, Laws 1937, c. 136, bearing the same title as the West Virginia Fair Trade Act. Here again the court, though reaching a conclusion exactly opposite to that of the Delaware court, gave no substantial reasons for such a conclusion. The court

merely said that "it is to be observed that the title to the Act refers to fixation of minimum prices 'through the use of voluntary contracts'. It does not in anywise express or carry a suggestion of a purpose to subject third parties to such contracts. Other reasons for this conclusion need not be discussed."

Only the Supreme Court of the state of Florida, in the case of Bristol-Myers Co. v. Webb's Cut-Rate Drug Co., Inc., 1939, 137 Fla. 508, 188 So. 91, 92, has exhaustively discussed reasons for holding unconstitutional a fair trade act containing a non-signer provision, but restrictively titled as is West Virginia's Fair Trade Act. That court reasoned as follows:

"The first part of the title states that it is for the purpose of protecting trade-mark owners, producers, distributors and the public. The next portion states that these persons are to be protected against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name. Then it proceeds to say how this protection is to be enforced, and the method is stated thus: 'Through the Use of Voluntary Contracts Establishing Minimum Resale Prices and Providing For Refusal to Sell Unless Such Minimum Resale Prices Are Observed.' Appellant contends that the clause just quoted means that resale prices, which shall be binding on all retailers, those who do not contract as well as those who do, are to be thus established by the resale prices set forth in the contracts which may be voluntarily entered into by those retailers who see fit to execute such contracts. But this is not, to our minds, the plain and obvious meaning of the language used; quite the contrary. The meaning contended for by the appellant may have been that which was in the mind of the draftsman of the act, but the actual language used would convey an entirely different

meaning to the ordinary mind. The significance of the word 'voluntary' is well understood by the average man, be he legislator or plain citizen. Such a person, reading the title to this act, would conclude that it applied only to those retailers who entered into voluntary contracts with trade-mark owners."

It has been held many times by the Supreme Court of Appeals of West Virginia that "the language of the title" of an act of the legislature "should be construed in its most comprehensive and liberal sense favorable to the validity of the act;" that only where it is "manifest that the contents of the act are not within the title" should the act be declared invalid; and that "all doubt will be resolved in favor of the constitutionality of the statute." It has been said that the test of sufficiency is whether the title "will convey to persons interested in the actual subject matter enough information to provoke the reading of the act," and that so long as the title fairly reflects "the purpose of the act, it was not necessary to descend to particulars in the title." See State v. Mines, 1893, 38 W.Va. 125, 18 S.E. 470; City of Wheeling ex rel. Carter v. American Casualty Co., 1948, 131 W.Va. 584, 48 S.E.2d 404, 410; Sypolt v. Shaffer, 1947, 130 W.Va. 310, 43 S.E.2d 235, 239; State ex rel. Hallanan v. Thompson, 1917, 80 W.Va. 698, 93 S.E. 810.

On the other hand, it has been made equally clear by decisions of the same court that in cases where the act itself flatly contradicts what its title imports it must be stricken down under the constitutional mandate. In the case of Stewart v. Tennant, 1903, 52 W.Va. 559, at page 569, 44 S.E. 223, at page 227, one of the greatest of West Virginia Judges, Brannon, in discussing the constitutional provision concerning clear titling of acts of the legislature says:

"The purpose of this provision, as declared by the courts, is to prevent the enactment of laws, in a clandestine and stealthy manner, by compelling a statement in the title of the act, of its aim and purpose, to the end that the public, as well as members of the legislature may conveniently and certainly know the character of pending legislation. But for this provision, omnibus bills could be put through the legislature, carrying all kinds of measures, concealed in all forms, and neither legislator nor the public could, with any degree of certainty, fully know their contents. * * *

"Although the courts construe this provision, in cases not within the mischiefs sought to be remedied by it, so as to sustain legislation, they rigidly enforce it in all cases falling within those mischiefs, and it makes no difference how meritorious the act may be. If the constitutional provision has been disregarded in the passage of it, it cannot be sustained."

In State v. Cordi, 1927, 103 W.Va. 23, 136 S.E. 505, 507, the title to the act under question was: "An Act for the protection of sheep, lambs, goats, kids and other property and providing compensation to the owner for the destruction, loss or injury by dogs for any sheep, lambs, goats, kids and other property and providing for damages to persons by dogs and also providing for taxation and protection of dogs and making dogs property and fixing punishment for any violation of this act." Laws 1925, c. 83. The part of the statute attacked declared it to be unlawful for any "unnaturalized foreign-born resident of this state to own, keep or permit to remain upon any premises under his control a dog of any kind within this state *. * *." It was held that the challenged portion was void because it could not be considered by any fair intendment as having "a necessary or proper connection with the title."

The case of Bedford Corporation v. Price, 1932, 112 W.Va. 674, 166 S.E. 380, 381, dealt with a statute titled as follows:

"An Act to amend and re-enact sections six, seven and ten of article

nine of chapter eleven and section eighteen of article six of chapter eleven of the official code of West Virginia, one thousand nine hundred and thirty-one, relating to tax levies and collections." Laws 1932, Ex. Sess., c. 12.

One section of the act provided for the collection and payment of *municipal* taxes, and allowed a discount for payment on or before a certain date. In an opinion holding this section of the act unconstitutional Judge Maxwell, speaking for the court, said:

"No person, whether public official or private citizen, upon reading the said title would have received the slightest intimation ·that the pending bill proposed to make drastic changes with reference to the collection of municipal taxes. * * * The constitutional provision that an act shall not embrace more than one object and that shall be expressed in the title (Constitution, article 6, § 30) does not render it necessary that the title shall descend to particulars, but it does require that the title shall be broad enough to give a fair and reasonable index to all the purposes of the act."

Plaintiff cites the case of Lemon v. Rumsey, 1929, 108 W.Va. 242, 150 S.E. 725, as authority for the proposition that Section 6 of the West Virginia Fair Trade Act is within the scope of the act's title. This case involved an act of the legislature bearing the following title: "An Act providing for the control and eradication of the plant disease commonly known as 'apple rust' in the several counties of this state." Laws 1925, c. 84. The act itself provided among other measures for the eradication of "apple rust," for the destruction of diseased red cedar trees, which were declared to be a public nuisance. Suit was brought to enjoin destruction of plaintiff's red cedar trees. The court held that the part of the act challenged by the plaintiff was valid, since it was merely one of the means selected to attain the end set forth in the title.

The distinction between the constitutional question posed in Lemon v. Rumsey and that in the case we are now considering is sharply apparent. There the title expressed a broad purpose; and the act provided for the means through which that purpose as expressed in the title was to be accomplished. Here the purpose expressed in the act is restrictive within itself, in that the title describes and limits the method whereby the purpose is to be attained. The legislature having described that method in the title as one which is to be employed "through the use of voluntary contracts establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed," a provision in the body of the act which authorizes the employment of means exactly opposite to those described in the title can hardly be said to be within the scope of the title, or even germane to it. Certainly no person reading the title would expect to find on reading the act that instead of the protection to trade-mark owners being secured through the use of voluntary contracts it is accomplished instead by establishing sanctions applicable also to merchants who have not signed contracts. This is a perfect instance for the application of the well known maxim that "*expressio unius est exclusio alterius.*"

I am sensible of the seriousness of any court's action in declaring an act of a state legislature unconstitutional. This is all the more apparent when the court which speaks is a federal rather than a state court. However, as I have said there has been no determination of the question here presented by the Supreme Court of Appeals of West Virginia, which would otherwise serve as a guide. In such a situation, I find no other course open than to follow what I believe to be the plain mandate of the West Virginia Constitution. In my opinion Section 6 of the West Virginia Fair Trade Act, insofar as it applies sanctions to non-signers of contracts, brings an object into the act which is not only not expressed

in the title, but which is the plain antithesis of the title.

The non-signer provision of the act is therefore, in my opinion, void. Plaintiff's action must be dismissed.

Counsel for the defendant will submit an appropriate order for entry.