## Paper Mate Manufacturing Co. v. Hess Brothers, Inc.

*Donald E. Wieand,* for plaintiff.
*Orrin E. Boyle,* for defendant.

KOCH, J., April 22,. 1958. — Plaintiff, Paper Mate Manufacturing Company, filed a complaint in equity against defendant, Hess Brothers, Inc., which is a retail distributor of merchandise in the City of Allentown. It is alleged that on two occasions defendant advertised, offered for sale and sold writing instru-

ments bearing plaintiff's trade-marks, brands or name at prices below the minimum retail prices stipulated therefor with other retailers in the Commonwealth of Pennsylvania in violation of the Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §7-11, as amended. Upon the filing of the complaint we issued a rule to show cause why defendant, who is a so-called nonsigner of a fair trade contract, should not be enjoined from these and other violations of this act.

The matter before us consists of defendant's preliminary objections and amendments to preliminary objections comprising 14 issues. However, the only contention pressed, both at oral argument and in the brief of counsel, concerns the demurrer which questions the sufficiency of the title to the Act of 1935, as amended.

Article III, sec. 3 of the Constitution of Pennsylvania provides: "No bill, except general appropriation bills, shall be passed containing more than one subject which shall be clearly expressed in its title." The title to the Act of 1935 is as follows:

"An Act to protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name."

This act was amended by the Act of June 12, 1941, P. L. 128, the title of which is:

"An Act to amend sections one and two of the Act approved the fifth day of June, one thousand nine hundred and thirty-five (Pamphlet Laws, two hundred sixty-six), entitled, 'an Act to protect trade-mark owners, distributors and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name', by extending the provisions thereof to vending equipment used in distributing such articles, and further defining parties having a right of action for unfair competition."

A further amendment of May 25, 1956, P. L. 1756, is titled as follows:

"An Act amending the Act of June five, one thousand nine hundred thirty-five (Pamphlet Laws 266), entitled, 'An Act to protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name,' further regulating exceptions to contracts of sale and actions at law for unfair competition."

Defendant maintains that the title of the Fair Trade Act of June 25, 1935, P. L. 266, as amended, is defective for this reason: The subject of the act is not clearly expressed in the title in that there is no reference or expression that the legislation is intended to establish an innovation in the law of contracts by binding strangers, nonsigners, to the contracts of others to which they have not in any manner agreed. It is urged that this portion of the act is in derogation of the common law, and therefore we are obliged to place a strict construction upon it: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58(8), 46 PS §558(8) ; Bristol-Myers Co. v. Lit Brothers, Inc., 33 D. & C. 52.

In spite of any legal or economic concepts which are advanced by this defendant, we cannot disregard the clear holding of the Supreme Court of Pennsylvania in Burche Co. v. General Electric Company, 382 Pa. 370, which sustained the constitutionality of this legislation.

While it is true that the Burche case contains no discussion concerning the title to this act of assembly, we agree with Judge Van Dusen's holding in General Electric Co. v. Hess Brothers, Inc., 155 F. Supp. 57, 61: "The objections to the Act based on the Pennsylvania Constitution should be presented to the Pennsylvania Supreme Court in view of the decision of that court

holding the Act constitutional and the Pennsylvania rule that, where an appellate court has passed on any constitutional objection to an Act of Assembly, it is presumed to have passed on all constitutional objections to that Act." Our research has failed to disclose any case which overrules Wheeler v. Rice, 4 Brewster 129 (1871), which held that where an act of assembly has been decided to be constitutional, an inferior court is bound by that judgment, notwithstanding new reasons are set up against it. The presumption of law is that all the existing reasons were considered and held insufficient. See also Swatara Township School District's Appeal, 1 Pa. Superior Ct. 502; Black's Constitutional Law, 3d ed., page 61.

This act was the subject of Supreme Court decisions on other occasions and even though constitutional questions were not involved, we must accept the fact that fair trade, or price fixing as defendant chooses to designate it, is the settled law of Pennsylvania in spite of the abandonment of the policy by many well known manufacturers in recent months: Bristol-Myers Company v. Lit Brothers, Inc., 336 Pa. 81; Lentheric, Inc. v. F. W. Woolworth Co., 338 Pa. 523. Chief Justice Kephart said in Turco Paint and Varnish Company v. Kalodner, 320 Pa. 421, 428: ". . . it is fair to assume that had there been any constitutional objections such as are here being considered, they would have been raised and the court would have passed on them."

Even though we believe that we would not be obliged to delve further into the constitutional question raised, nevertheless we will present our views on the precise problem.

In construing this constitutional provision, we are governed by the well settled principles reviewed in Boyertown Burial Casket Co. v. Commonwealth, 366 Pa. 574, 590:

"It is well settled by a multitude of cases that the title need not be an index nor a synopsis of the contents of the Act. On the contrary, all that is required is that the title shall contain words sufficient to cause one having a reasonably inquiring state of mind to examine the Act in order to determine whether or not he may be affected by it and that, unless a substantive matter entirely disconnected with the named legislation is included therein, the Act does not fall within the constitutional inhibition.

"As said by the Supreme Court in Commonwealth v. American Gas Company, 352 Pa. 113, 118-9. 'In Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, Kelley v. Earle, 325 Pa. 337, 190 A. 140, and Gumpert's Estate, 343 Pa. 405, 23 A. 2d 479, we had occasion to review this constitutional provision and to assert the principles governing its application. As stated in Gumpert's Estate, at page 407, by Mr. Justice Horace Stern: "It is unnecessary to elaborate upon the oft-repeated principle that all the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III.' " ' ".

The expressed purpose of the legislature was to protect trade-mark owners and others against uneconomic distribution practices relating to articles of standard quality having a distinguishing trade-mark, brand or name: Bristol-Myers Co. v. Lit Brothers, supra, page 85. Defendant, however, contends that the title is insufficient to put it, a nonsigner, upon notice

that the legislation is applicable to those in this category. If the title to the act made any reference to voluntary contracts, there might be merit in this position. However, to any merchant of a reasonably inquiring mind, it is immediately apparent that the title of the original act and its amendments is applicable to any person who is engaged in the distribution of certain types of articles. Furthermore, we are of the opinion that defendant and others in his category could not be misled by the title and that it meets the test set forth in Provident Life & Trust Company v. Hammond, 230 Pa. 407, 411, wherein the Supreme Court held that ". . . the purpose was to prevent fraud and deception by requiring the title of the bill to disclose fully and clearly its subject so that all interested parties could be heard for and against the proposed legislation if they desired." See also Commonwealth v. Stofchek, 322 Pa. 513, 517, where Chief Justice Kephart said:

"The real purpose of section 3, of article III, must be considered in answering the question raised by appellant. The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in Soldiers and Sailors Memorial Bridge, 308 Pa. 487, citing Car v. Aetna A. & L. Co., 64 Pa. Superior Ct. 343, at 349, the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill.' It is intended to operate to exclude from the measure that which is secret and unrelated: Beckett v. City of Allegheny, 85

Pa. 191. The history of this section indicates that this is its true purpose."

Equally untenable is the position that since the act made a change in the common law, it must be specifically spelled out in the title. We might well question the soundness of the contention that this statute makes a change in the common law. The act does not make a nonsigner a party to a contract in the strict sense. All that a contract does in any given case is to serve as a foundation stone for fixing the established prices so as to prevent unfair competition. This is a legitimate and not completely new legislative objective. In any event the portion of the Act of 1935 regarding nonsigners is nothing more than an incidental provision and it need not be enumerated or indexed in the title if it is germane to the legislation as a whole: Gumpert's Estate, supra.

Authority for the sufficiency of the title to the Pennsylvania legislation is to be found in the decisions of several States which have fair trade acts with identical titles.

In Weco Products Co. v. Sam's Cut Rate, Inc., 296 Mich. 190, 295 N. W. 611, the constitutionality of the Michigan act was upheld upon attack by a "nonsigner" on the grounds that the title failed to conform to this constitutional provision: "No law shall embrace more than one object which shall be expressed in the title." The title to the act is as follows: "An act to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of standard quality under a distinguished trade-mark, brand or name*." The Michigan court said:

" 'While it (the Covert Act) contains various related provisions not directly indicated or enumerated in the

---

\* The Pennsylvania act is identical except that it uses the term "injuries" instead of what we deem the more appropriate word "injurious."

title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.

" 'A title is but a descriptive caption, directing attention to the subject matter which follows.'

"[2] A title which directs attention to the protection of trade-mark owners, etc., against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark is expressive of the purpose and scope of the enactment. Consideration of the language of the act does not show any objects which are foreign to the statement in the title and contains matter which should be expected in an act bearing such a title. We are satisfied that the title of the act in question does not violate the constitutional requirement."

Defendant seeks to distinguish the Weco case on the ground that the Michigan Constitution uses the term "object" whereas the word "subject" appears in the Pennsylvania provision. While we appreciate the grammatical significance of this position, it is not persuasive in the light of the principle that the only requirement in this Commonwealth is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter: Gumpert's Estate, supra, page 407. Defendant, therefore, is put on notice of the provisions of the act regardless of whether it deals with an object or a subject.

The title of the South Carolina act was upheld in Miles Laboratories, Inc., v. Seignious, 30 F. Supp. 549. There, too, the title and constitutional provisions are identical to the Pennsylvania act.

In General Electric Company v. Wender, 151 F. Supp. 621, 622, the district court considered the title to the Fair Trade Act of West Virginia which was titled as follows:

" 'An Act to protect trade-mark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trademark, brand or name, *through the use of voluntary contracts* establishing minimum resale prices and providing for refusal to sell unless such minimum resale prices are observed.' W. Va. Laws 1937, c. 123."

The court held that the act insofar as it applies sanctions to nonsigners, was void as in violation of the West Virginia Constitution, the title provision of which is similar to the Pennsylvania Constitution. We cite this case for the reason that it makes reference to the fact that four States use the term "through the use of voluntary contracts" in the title and points out that a large number of States, including Michigan and Pennsylvania, do not have this phrase in the title. The court distinguished Weco Products Co. v. Sam's Cut Rate, supra, only because the Michigan act does not contain the restrictive words, "through the use of voluntary contracts."

The Fair Trade Act of 1935 is cloaked with a presumption of constitutionality and it has withstood the attacks of many constitutional arguments. We find no merit in the present assault through the medium of article III, sec. 3, of the Pennsylvania Constitution upon what we deem a properly drafted legislative enactment.

*Order*

And now, April 22, 1958, defendant's preliminary objections are overruled and it is ordered that it file an answer on the merits within 20 days after service

of this order upon its counsel. Either party may apply to the court to fix a date for the hearing on the application for a preliminary injunction.